# DOUGLAS & LONDON, P.C.

Attorneys At Law
111 John Street
Suite 1400
New York, NY 10038
(212) 566-7500
FAX: (212) 566-7501
**www.DOUGLASANDLONDON.com**

Gary J. Douglas
Michael A. London*

Virginia E. Anello^
Nicholas E. Warywoda
Randolph D. Janis
Rebecca G. Newman*
Kristin D. Padden◊
Michael D. Sharp
Matthew S. Schoen*
Michael F. Bastone
    * Also admitted in NJ
    ^ Also admitted in LA
    ◊ Admitted in NJ only

October 18, 2010

**VIA ECF**
Hon. Raymond J. Dearie
Chief Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: **International Brotherhood of Teamsters Local 456 Health and Welfare Trust Fund, et al v. Quest Diagnostics Incorporated and Nichols Institute Diagnostics**
          **Civil Action No. 10-CV-1692**

Dear Chief Judge Dearie:

    We represent the Plaintiffs in the above-referenced litigation and write to respectfully respond to the October 18, 2010 letter of Defendants, Quest Diagnostics Inc. ("Quest") and Nichols Institute Diagnostics ("NID"), in which they request a pre-motion conference with the Court.

    **All Causes of Action Against Quest Diagnostics:** This action challenges the deceptive acts, practices, misrepresentations and fraudulent course of conduct of both Quest and NID in manufacturing, marketing and promoting defective diagnostics kits as accurate and reliable, while suppressing evidence to the contrary. Plaintiffs' complaint states viable causes of action against Quest because it contains "enough facts to state a claim to relief that is plausible on its face," meaning that enough facts have been alleged that the Court can reasonably infer that Quest is liable. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2009). Defendants' reference to ¶ 46 of Plaintiffs' complaint as the sole assertion regarding Quest's fraudulent conduct ignores the numerous other allegations within Plaintiffs' complaint that do allege fraudulent conduct on behalf of both Quest and Nichols. Indeed, Plaintiffs allege that (1) a lawsuit against Quest and Nichols was filed under the *qui tam* provisions of the False Claims Act in which it was alleged that both parties defrauded the government by causing healthcare providers to bill Medicare for defective tests (¶¶57-61); (2) criminal and civil cases against Quest and Nichols resulted in a settlement agreement providing $262 million in payments under the False Claims Act and a $40 million criminal fine (¶¶ 60-61); and (3) Defendants Quest and Nichols were participants in an enterprise that acted to enable Nichols to fraudulently manufacture, market and promote the defective kits as accurate and reliable (¶76). In addition, Plaintiffs allege that Quest, as successor to Nichols, an entity that no longer exists, is liable for Nichols (¶42). Thus, the amended complaint is clearly not "barren" of facts to support Plaintiffs' allegations against Quest. As such, when reviewing Plaintiffs' complaint in a light most favorable to the Plaintiffs, this action should not be dismissed pursuant to FRCP 12(b)(6) as against Quest.

**Plaintiffs have Standing under Article III**: Plaintiffs and the Class seek a refund and/or reimbursement of the costs of and associated with the defective kits and medical tests that otherwise would not have been paid absent said deceptive and fraudulent conduct. They have alleged that they and the Class have suffered a concrete injury-in-fact – specifically that they all paid monies for tests rendered worthless because Defendants' test kits were defective. See ¶¶ 6, 7, 9, 51, 56, 64, 68, 71, 86, 98, 114, 215. It is well settled law in the Second Circuit that third-party payors, such as the Plaintiffs herein, have Article III standing to pursue claims for economic damages regardless of the fact that they did not purchase the defective product from the manufacturer itself. *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 350 (2d Cir. 2003). Further, economic injuries are sufficient for standing. *In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation*, 701 F.Supp.2d 356, (E.D.N.Y. 2010). In this regard, Defendants' position that the only real parties in interest in this case are laboratories that directly paid for the defective kits completely ignores the role of third party payors ("TPPs") in the medical community as well as Second Circuit jurisprudence which holds that TPPs, as entities which suffer the largest direct economic injury, have standing to sue. *Desiano*, 326 F.3d at 350. Here, Plaintiff and the Class paid monies and received no value in return. Thus, Plaintiffs' interests are clearly aligned with the interests of the Class. As such, dismissal under FRCP 12(b)(1) is not warranted.

**Dismissal of the RICO Counts is Not Warranted**: Plaintiffs have adequately pled their RICO claims. To assert a RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001). Here, Plaintiffs have alleged that the "enterprise" includes Defendants and "other as yet unknown marketing and distribution agents" and have further sets forth in their complaint the fraudulent activities performed by the enterprise, including (1) communications that led to the failure to timely disclose negative data, (2) fraudulent misrepresentations of the accuracy and reliability of the defective kits and (3) acts to conceal the fraud. (¶¶81-86). So long as the allegations are sufficiently particularized to put the Defendant on notice as to what the plaintiffs' charge its fraudulent conduct consisted of, the date, time and place need not be pled with absolute precision. *In re Rockfeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Because certain aspects of an alleged fraud may have been concealed by the Defendants (¶162-172), courts can apply Rule 9(b) "with some flexibility." *Id.* Accordingly, Plaintiffs have adequately alleged RICO enterprise and have sufficiently pled that Defendants have made false or misleading representations, which are actionable under § 1962(c-d).

**Statute of Limitations**: The statute of limitations for all causes of action set forth in Plaintiffs' complaint only began to run in April 2009 when the aforementioned *qui tam* federal criminal complaint against the named Defendants was unsealed, at which point in time Plaintiffs were put on notice of the facts underlying Defendants' fraudulent conduct. *See In Re Schering-Plough Corp*, 2009 WL 2043604 at *22 (D.N.J. 2009). The burden is on the Defendants to prove that Plaintiffs have failed to comply with the relevant limitations period regarding their RICO claim. *Gunter v. Ridgewood Energy Corp.*, 32 F.Supp.2d 166, 174 (D.N.J. 1998). "Moreover, because 'the applicability of the statute of limitations will involve questions of fact for the jury,' Defendants bear a heavy burden in seeking to establish that there is no genuine issue of material fact and that as a matter of law the [RICO] claims are barred." *Id.* Here, Defendants are unable to meet their heavy burden because nothing on the face of Plaintiffs' complaint establishes conclusively that Plaintiffs knew or should have known the details of Defendants' fraudulent marketing campaign and alleged illegal conduct by the dates alleged by Defendants. The fact that Plaintiffs' complaint alleges that Defendants conducted a product recall in 2005 does not alone establish sufficient notice to the class in 2005.[1] As such, Defendants argument that the statute of limitations on Plaintiffs' claim began in 2005 is disingenuous. Furthermore, Defendants arguments that the statutes of limitations applicable to Plaintiffs' Third Cause of Action (violation of New York G.B.L. §§ 349 and 350) and Seventh and Eight Causes of Action (Breach of

---

[1] See *In re Schering-Plough Corp*, 2009 WL 2043604 *22-23 (denying defendants motion to dismiss RICO claims as barred by 4-year statute of limitations where plaintiffs' allegation that defendants concealed their illegal conduct raised the possibility that the applicable statutory periods should be tolled and, by implication, creates an additional hurdle to establishing that the RICO claims are barred).

2

Express and Implied Warranties) have expired fail for the same reasons. In addition, New York recognizes the doctrine of equitable tolling, provided Plaintiff can show that the Defendant has wrongfully deceived or misled him in order to conceal the existence of his claim. *Kotlyarsky v. N.Y. Post*, 195 Misc. 2d 150, 757 N.Y.S.2d 703, 707-08 (N.Y. Misc. 2003). As to Plaintiffs' warranty claims, in *Wiltshire v. A. J. Robins Co., Inc.*, 88 A.D.2d 1097 (4th Dept. 1982), the court held that claims based on express warranties for damages resulting from the use of an intrauterine device were improperly dismissed as time-barred, where the evidence was insufficient to determine whether the warranties explicitly extended to future performance of the device so as to extend the statute of limitations until the breach of the warranties was or should have been discovered. *Id.*; U.C.C. §2-725(1).[2] Therefore, Plaintiffs actions are not barred by statutes of limitations.

**State Law and Common Law Claims:** Defendants continuously mischaracterize Plaintiffs' injury as "indirect." (¶68). New York law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce . . . ." and any person "who has been injured by reason of any violation" of this statute is entitled to bring an action. N.Y. Gen. Bus. Law § 349, *et seq*. The statute does not expressly define the term "person," and nothing in the statute or related case law precludes third party payer standing, see *Desiano*, 326 F.3d at 350. Defendants' actions qualify as "consumer oriented" because the kits were described as having "excellent correlation" despite known defects and fraudulent directional inserts, medical articles and marketing materials were all directed towards consumers, TPPs and the medical community. (¶ 46, 56). For purposes of New York law, the critical question is whether defendants' "acts or practices have a broad impact on consumers at large." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d at 344 (N.Y. 1999). In *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993 (S.D.N.Y. 2006), the question of standing was totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23; this question is more appropriately answered through the class certification process. Plaintiffs' breach of warranty claims under the UCC also do not fail for the same reason that plaintiffs are considered purchasers of the products. *Desiano*, 326 F.3d at 350.[3] Plaintiffs' fraud and misrepresentation claims have merit because under *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), "a showing of first-party reliance is not required." Likewise Plaintiffs' unjust enrichment claims should be sustained where by virtue that Defendants falsely marketed and sold the defective kits, it would be inequitable for the Defendants to retain the benefit conferred on them by the Plaintiffs. (¶211-216). New York law does not require an unjust enrichment plaintiff to plead "direct dealing," or an "actual, substantive relationship" with the Defendants. *Waldman v. New Chapter, Inc.*, 2010 WL 2076024 (E.D.N.Y. 2010).[4]

**Subject Matter Jurisdiction Exists:** CAFA gives federal courts jurisdiction over class actions in which the amount in controversy exceeds $5 million and in which any of the members of a class of plaintiffs is a citizen of a state different from any Defendant. 28 U.S.C. § 1332(d). Defendants again incorrectly state that no facts exist to establish the $5 million threshold. There are an estimated 40,000 TPPs nationwide and the complaint alleges that millions of dollars were expended by the named Plaintiffs, on behalf of themselves and others similarly situated who paid for defective kits and medical tests. (¶ 6, 7, 9, 51, 56, 64, 68, 71, 86, 98, 114, 215). Defendants' allegation that the citizenship of the plaintiff entities are determined by that of their trustees is also misplaced because Taft-Hartley funds are not exactly defined as trusts. The New York fund has members in New York; Pennsylvania fund has members in Pennsylvania; and those Plaintiffs alone are diverse from the Defendants but their membership extends to dozens of states. Accordingly, Plaintiffs have met their burden of establishing subject matter jurisdiction.

---

[2] *See also Weiss v. Herman*, 193 A.D.2d 383, 597 N.Y.S.2d 52 (N.Y.A.D. 1993)(such an express warranty for future performance "can stem from the literature disseminated by the manufacturer to the medical profession." The court properly found that the question of whether defendant had expressly warranted future performance was a question of fact for the jury, and that plaintiff had sufficiently pleaded a claim for breach of express warranty).

[3] *See also Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 383 F.Supp.2d 428 (S.D.N.Y. 2003)(investors adequately alleged a claim for breach of warranty when defendants' made such a warranty, plaintiffs' relied on that warranty, and the reliance caused damages).

[4] *See also In re Bayer Corp.*, 701 F.Supp.2d at 384; *see also In Re Bextra/Celebrex*, 2007 WL 2028408 (N.D.Cal. 2007).

Respectfully submitted,

*/s/ Virginia Anello*

Virginia E. Anello, Esq.
Michael A. London, Esq.
DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
Stephen B. Murray, Jr., Esq.
Stephen B. Murray, Sr., Esq.
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

Gregory Hach, Esq.
Michael A. Rose, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax: (212) 779-0028

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580