UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO:  10-CV-1692 |
| Plaintiffs, | |
| v. | |
| QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS, INC. | |
| Defendants | |

**NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS QUEST
DIAGNOSTICS INC. AND NICHOLS INSTITUTE DIAGNOSTICS
INC. CONCERNING GOVERNMENTAL INVESTIGATIONS**

To:     Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc., and their
        attorneys:

> Michael S. Gardener
> Peter A. Biagetti
> Breton Leone-Quick
> Lisa A. Palin
> Kristen Scammon
> Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
> One Financial Center
> Boston, MA  02111

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take

the deposition upon oral examination of Defendants Quest Diagnostics Incorporated and/or

Nichols Institute Diagnostics, Inc. The deposition will take place on March 9, 2011 at Douglas &

London, P.C., 111 John Street, Suite 1400, New York, New York 10038, or another location

mutually agreed upon by the parties, and will continue from day to day thereafter until completed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate one or more officers, directors, managing agents, and/or other persons who consent to testify on its behalf regarding the below-listed subject matters that are known or reasonably available to Defendants and regarding the documents identified in Exhibit "A".

The deposition shall be taken before a notary public or another officer authorized by law to administer oaths. The deposition will be recorded by stenographic means.

Dated: New York, New York
February 10, 2011

Respectfully submitted,

Gregory Hach, Esq.
Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax: (212) 779-0028

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
David B. Franco, Esq.
DUGAN LAW FIRM
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

Michael A. London, Esq.
Virginia E. Anello, Esq.
DOUGLAS & LONDON, P.C.

111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

**Definitions and Instructions**

The following definitions apply to this Notice of Deposition, including those matters set forth in Exhibit A hereto, and are deemed to be incorporated into each subject and request for documents listed below:

1.      "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics, Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their predecessors, subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc.  The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

2.      "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2). Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates,

working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

3.      "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

4.      "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

5.      "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

6.      "Person" is defined as any natural person or any business, legal or governmental

entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

7.      "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

8.      "Purchase and/or Acquisition" refers to the transfer, purchase, merger, sale, acquisition, ownership, right to control, lease, procurement, and any transaction or act relative to the sale, purchase and acquisition of equity, assets and/or liabilities of Nichols Institute Diagnostic, Inc. in 1994 by MetPath, Corning Incorporated, Corning Clinical Laboratories Inc. or any of their subsidiaries, affiliates, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with MetPath, Corning Incorporated or Corning Clinical Laboratories Inc.

9.      "Quest Spin-off" refers to Corning Clinical Laboratories Inc.'s spin off on or about December 31, 1996 of its laboratory testing business establishing Defendant Quest.

10.     "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

11.     "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

12.     "Sales and marketing materials" refer to and include advertising, promotional, sales and marketing materials, all of which include but are not limited to all print, internet, and

broadcast advertisements, sales aids, visuals, sales scripts, question and answer guides, sales implementation and resource guides, reminders pieces, promotional items, Quest and/or Nichols business summaries, package inserts, directional inserts, endocrine resource guides, and any and all other materials relating to sales and marketing."

13.     "Or" and "and" will be used interchangeably.

14.     Unless otherwise indicated, the "Relevant Period" for the information sought is 2000 to the present.

## Deposition Subject Matter

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

## Governmental Investigations

1.      The person should also be able to testify concerning:

a.      Defendants' interactions with governmental entities, including the United States Congress, United States Food and Drug Administration ("FDA"), the Office of Inspector General of the Department of Health & Human Services, the United States Postal Inspection Service, the Federal Bureau of Investigation, the United States Department of Justice, including specifically but without limitation the U.S. Attorney's Office for the Eastern District of New York, and any state Attorney General regarding investigations that relate to the development, manufacture, testing, marketing, sales or distribution of the Defective Nichols Kits.

b.      The identity and nature of documents responsive to governmental entity demands for records, including the United States Senate, the United States House of

Representatives, United States Food and Drug Administration ("FDA"), the Office of Inspector General of the Department of Health & Human Services, the United States Postal Inspection Service, the Federal Bureau of Investigation, the United States Department of Justice, including specifically but without limitation the U.S. Attorney's Office for the Eastern District of New York, and any state Attorney General.

        c.      The identity of all Defendants' employees responsible for responding to and/or compiling the documents referred to herein.

        d.      The number of and content of requests for information or document production received from government entities pertaining to investigations that relate to the development, manufacture, testing, marketing, sales or distribution of the Defective Nichols Kits.

## EXHIBIT A – DOCUMENT REQUESTS

Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. (the "Witness") is requested to bring with him/her the following documents, whether held in her actual constrictive possession, on the extent not produced in response to prior discovery or other requests relating to his/her knowledge of the Defective Nichols Kits.

A complete copy of all documents, as that term is defined in the Federal Rules of Civil Procedure, tangible things, reports, models or data compilations that have been provided to, reviewed by, or prepared by or for the Witness in anticipation of his/her testimony.  This request includes, but not limited to:

1.      The documents, data or other information considered by the Witness in preparation for her/his testimony relating to his/her knowledge of the Defective Nichols Kits.

2.      Exhibits to be used as a summary or in support of his/her testimony.

3.      All documents produced to any governmental entity pursuant to demands for records as described herein.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Rule 30(b)(6) Deposition to Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. have been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

Frank R. Schirripa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS, INC.<br><br>              Defendants. | 10-CV-1692 (RJD)(RLM) |

**PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS
QUEST DIAGNOSTICS INC. AND NICHOLS INSTITUTE DIAGNOSTICS INC.
CONCERNING THE DATA STORAGE, RETRIEVAL AND PRESERVATION**

To:     Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc., and their attorneys:

>          Michael S. Gardener
>          Peter A. Biagetti
>          Breton Leone-Quick
>          Lisa A. Palin
>          Kristen Scammon
>          Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
>          One Financial Center
>          Boston, MA  02111

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take

the deposition upon oral examination of Defendants Quest Diagnostics Incorporated and/or

Nichols Institute Diagnostics, Inc. The deposition will take place on March 1, 2011 at Douglas &

London, P.C., 111 John Street, Suite 1400, New York, New York 10038, or another location

mutually agreed upon by the parties, and will continue from day to day thereafter until completed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate one or more officers, directors, managing agents, and/or other persons who consent to testify on its behalf regarding the below-listed subject matters that are known or reasonably available to Defendants and regarding the documents identified in Exhibit "A".

The deposition shall be taken before a notary public or another officer authorized by law to administer oaths. The deposition will be recorded by stenographic means.

Dated: New York, New York
       February 10, 2011

Respectfully submitted,

Gregory Hach, Esq.
Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax:  (212) 779-0028

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
David B. Franco, Esq.
DUGAN LAW FIRM
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax:  (504) 648-0181

Michael A. London, Esq.
Virginia E. Anello, Esq.
DOUGLAS & LONDON, P.C.

111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

## Definitions and Instructions

The following definitions apply to this Notice of Deposition, including those matters set forth in Exhibit A hereto, and are deemed to be incorporated into each subject and request for documents listed below:

1.     "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics, Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their predecessors, subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc.   The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

2.     "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2). Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates,

working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

3.      "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

4.      "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

5.      "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

6.      "Person" is defined as any natural person or any business, legal or governmental

entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

7.      "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

8.      "FAC" means the First Amended Class Action Complaint filed on August 10, 2010.

9.      "Governmental Investigation" shall include any concern, document demand, inquiry, investigation, lawsuit and/or subpoena initiated by any federal or state governmental entity, including without limitation the United State Congress, United States Food and Drug Administration ("FDA"), the Office of the Inspector General of the Department of Health & Human Services, the United States Postal Inspections Service, the Federal Bureau of Investigation, the United States Department of Justice, including specifically the U.S. Attorney's Office for the Eastern District of New York, and any state Attorney General regarding investigations that relate to the development, manufacture, testing, marketing, sales or distribution of the Defective Nichols Kits.

10.      "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

11.      "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

12.   "Sales and marketing materials" refer to and include advertising, promotional, sales and marketing materials, all of which include but are not limited to all print, internet, and broadcast advertisements, sales aids, visuals, sales scripts, question and answer guides, sales implementation and resource guides, reminders pieces, promotional items, Quest and/or Nichols business summaries, package inserts, directional inserts, endocrine resource guides, and any and all other materials relating to sales and marketing."

13.   "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDAs)[1] and mainframe computers.

14.   "Computer System" or "Computerized System" shall mean all of the components of any digital system or systems utilizing a Computer or multiple Computers including without limitation such components as a processor, storage device, memory, data information routing devices and other relevant peripherals.

15.   "Digital" is synonymous with the term "electronic" and "computerized" and shall be construed to mean the same thing.

16.   "Data" and "Information" shall be construed to mean the same thing.

17.   "Electronic data" or "data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, version changes or highlighting of any kind) of data or information of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.

---

[1]   The term PDAs includes any and all personal digital assistants or smartphone, including but not limited to, Blackberry devices, Apple iPhones, Apple iPads, Compaq Ipaq devices, HP Jornadas, and PalmPilots.

18.     "Electronic Communications" shall mean any form of digital communications, including without limitation, electronic mail, instant messaging, workgroup communications programs, discussion threads and internet and intranet blog sites.

19.     "Electronic media" means any magnetic or other storage media device used to record electronic data.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or any other vehicle for digital data storage and/or transmittal.

20.     "Database" shall mean any computerized system used to store, collect, manage, access, organize, report on, track or otherwise record data or information regardless of whether a Database Management System ("DBMS") is utilized and regardless of whether the data is contained in a relational or otherwise structured configuration.

21.     "Network" means any hardware and/or software combination that connects two or more computers or other digital systems together and which allows the computers or other digital systems to share and/or transfer data between them or their respective storage areas.  For the purposes of this definition, the connection between or among the computers or digital systems need not be either physical or direct, *i.e.*, wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities.  In addition, there need not be a central file or data server or a central network operating system in place, *i.e.*, peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.     "Rotation" means any plan, policy or procedure that involves the re-use of an electronic media device after it has been used for backup, archival, or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the

electronic data residing on the device prior to its re-use.

23.     "Information or Knowledge Management Systems" shall mean any digital systems used to collect, manage, track, organize, report or otherwise record information and knowledge, including without limitation, all databases, personal information management systems, or project management systems.

24.     "Financial System" shall mean any digital or computerized system used to track, maintain or otherwise record financial transactions of any type.

25.     "Digital Imaging Systems" shall mean any and all digital systems used to duplicate paper documents into digital format (such as PDF or TIFF formatted electronic images) for use or storage using Computerized Systems.

26.     "Data Transportation Systems" shall mean any digital systems used to transport or transfer digital information between or among computer systems, including without limitation, terminal server applications, remote access systems (through dial-up, direct, internet or other type of connection), FTP services, Wide Area Networks, or other means of transferring digital information.

27.     "Data Exchange Systems" shall mean any system, protocol or other guidelines established or used to exchange digital information between multiple sources.

28.     "PBX Systems" shall mean a Private Branch Exchange telephone system, which is a commonly used corporate enterprise telephone system, and includes without limitation, the equipment and software used by that system, including without limitation, voice mail systems and system use log files (such as SMDR files).

29.     "Protocol" shall mean a set of conventions governing the treatment of communications.

30.    "SMDR" shall mean Station Message-Detail Recording system, which is generally an integrated part of an internal enterprise telephone system (such as a PBX system described herein) and is used to create a record of all calls originated or received by users of that telephone system.

31.    "Or" and "and" will be used interchangeably.

32.    Unless otherwise indicated, the "Relevant Period" for the information sought is 2000 to the present.

### Deposition Subject Matter

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

1.    Communications protocols and procedures between and among Defendant Quest and Defendant Nichols.

2.    All steps taken by Defendants, on their behalf or at their request, to maintain, search for and preserve all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody and control of Defendants relating to these lawsuits and the allegations in the complaints.

3.    The identity of all present or former employees or agents of Defendants who made any efforts to search for, restore and locate documents relating to this lawsuit, the government investigation arising from the sale of Defective Nichols kits, and the allegations of the complaint.

4.    The general structure of Defendants' Computers, Computer Systems, Financial Systems, Networks, Data Transport Systems, Data Exchange Systems, computer

infrastructure and related systems, including without limitation:

a. The number, types, and locations of Computers in use and/or no longer in use for the individuals involved in:

    i. the sales, marketing advertising and promotion of the Defective Nichols Kits;

    ii. the development and manufacture of the Defective Nichols Kits;

    iii. the testing, evaluating and monitoring of the accuracy and reliability of the Defective Nichols Kits;

    iv. responding to Governmental Investigations into the Defective Nichols Kits;

    v. communications with actual or potential sales and marketing contractors, consultants, Healthcare Providers, Medical Device/Equipment Distributors within and outside the United States concerning:

        1. the sales, marketing advertising and promotion of the Defective Nichols Kits within and outside the United States;

        2. the testing, evaluating and monitoring of the accuracy and reliability of the Defective Nichols Kits; and

        3. Governmental Investigations into the Defective Nichols Kits.

b. The number, types, and locations of Computers in use and/or no longer in use containing any and all documents concerning:

    i. the sales, marketing advertising and promotion of the Defective Nichols Kits;

ii.   the development and manufacture of the Defective Nichols Kits;

iii.  the testing, evaluating and monitoring of the accuracy and reliability of the Defective Nichols Kits;

iv.  responding to Governmental Investigations into the Defective Nichols Kits;

v.   communications with actual or potential sales and marketing contractors, consultants, Healthcare Providers, Medical Device/Equipment Distributors within and outside the United States concerning:

1.   the sales, marketing, advertising and promotion of the Defective Nichols Kits within and outside the United States;

2.   the testing, evaluating and monitoring of the accuracy and reliability of the Defective Nichols Kits; and

3.   Governmental Investigations into the Defective Nichols Kits.

including, but not limited to, the following locations:

i.   Madison, New Jersey;

ii.   San Clemente, California;

iii.  San Juan Capistrano, California;

iv.  Chantilly, Virginia

5.   The past and present operating system and application software with regard to the Computers identified in subject 4.

6.   The name and version of the network operating system currently in use and/or no longer in use but relevant to the Computers identified in subject 4, including the

size in terms of storage capacity, number of users supported (if applicable), and dates/descriptions of systems upgrades and/or downgrades.

7.    The file-naming and location-saving conventions for Computers in use and/or no longer in use but relevant to the Computers identified in subject 4.

8.    The backup and archival disk or tape inventories, schedules, and/or logs for the Computers in use and/or no longer in use but relevant to the Computers identified in subject 4.

9.    The backup rotation schedules and archiving procedures, including any automatic data recycling programs for the Computers in use and/or no longer in use but relevant to the Computers identified in subject 4.

10.    Any and all emergency off-site backup and archival disk or tape inventories, schedules, and/or logs for the Computers in use and/or no longer in use but relevant to the Computers identified in subject 4.

11.    All other policies and procedures used by Defendants for the backing-up, archiving, preserving and restoring of data relevant to above items, including without limitation, the frequency of back-ups/archiving, the type of back-ups/archives performed, the types of data backed-up/archived and the locations of that data, media inventories and recycling procedures, auto-delete mechanisms and policies, the type(s) of software used to perform those back-ups/archives and restorations and issues arising out of the backing-up, archiving, preserving and restoring of relevant data.

12.    The locations of electronic records relevant to the subject matter set forth in subject 4.

13.    The written or oral policies and procedures in connection with electronic records management for all Defendants from January 1, 1997 to the Present.

14.    The written or oral corporate policies for all Defendants regarding employee use of company computers, data, and other technology.

15.    Any and all information concerning any delete agent computer program in use by any Defendant which was or could have preserved on backup tapes any server-based mailbox(es), from January 1, 1997 to the Present.

16.    Any and all information pertaining to any missing and/or lost electronic data that was in existence as of January 1, 1997, but no longer exists as of today.

17.    Any document retention policy(ies), including but not limited to specific written notices given by or to any Defendant employees after the filing of the initial complaint on April 15, 2010, after the filing of the FAC on August 10, 2010, with regard to preservation of all documents, data compilations (including electronically recorded or stored data) and tangible objects relevant to the allegations asserted in the initial complaint and the FAC.

18.    Any and all information or communications pertaining to specific written notices given by or to any Defendants' employees after the filing of the initial complaint on May 11, 2007, after the filing of the FAC on August 10, 2010, with regard to preservation of all documents, data compilations (including electronically recorded or stored data) and tangible objects relevant to the allegations asserted in the initial complaint and the FAC.

19.     Any and all information concerning the preservation of e-mail, for any individuals identified in subject 4.

20.     Any and all patient or customer relations management or other systems utilized by Defendants to track, collect or otherwise record any customer information regarding any complaints in connection with the problems concerning the accuracy and reliability of the Defective Nichols Kits.

21.     Any and all other Database system(s) utilized by Defendants to track, collect or otherwise record any information regarding the problems concerning accuracy and reliability of the Defective Nichols Kits, including, but not limited to, any complaints in connection therewith.

22.     Any Electronic Communications system(s) used by Defendants.

23.     Any other Information or Knowledge Management systems utilized by Defendants in the normal course of business, including without limitation any intranet system used by Defendants to store, track, distribute, record or otherwise disseminate or store any information concerning the development, manufacturing, sales, marketing, advertising, promotion, testing, monitoring or evaluation of the Defective Nichols Kits.

24.     Any and all Phone System(s), including without limitation, any PBX Systems, analog systems, recording devices, SDMR, automated telephone logs or voice mail systems, utilized by Defendants in any telephone call center that initiates or receives telephone calls regarding consumer, customer or patient service, or other such inquiries or contacts.

25.    Any and all other Phone System(s) utilized by Defendants, including without limitation, any PBX Systems, analog systems, recording devices, automated telephone logs or voice mail systems.

26.    Any and all Digital Imaging Systems utilized by Defendants.

27.    Any other computer applications and/or business systems used by Defendants.

## EXHIBIT A – DOCUMENT REQUESTS

Defendants are requested to produce the following documents to the undersigned in advance of the deposition date designated herein and within five (5) days of the date of the notice and to designate one or more corporate representatives who are most knowledgeable about such documents.

1.      The documents, data or other information considered by the Witness in preparation for her/his testimony relating to his/her knowledge of the foregoing subject matters.

2.      Exhibits to be used as a summary or in support of his/her testimony.

3.      All database mappings, diagrams, schemas or other such documentation available for any Database identified by the Subject Matters above.

4.      All written versions of the policies, procedures or guidelines identified by the Subject Matters above.

5.      All document retention policies, manuals or other written documents as identified by the Subject Matters above.

6.      All written or printed network mappings, layouts or schemas regarding the Computers identified by the Subject Matters above.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Rule 30(b)(6) Deposition to Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. have been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

Frank R. Schirripa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS, INC.<br><br>                Defendants. | 10-CV-1692 (RJD)(RLM) |

**PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS
QUEST DIAGNOSTICS INC. AND NICHOLS INSTITUTE DIAGNOSTICS
INC. CONCERNING SALES AND MARKETING**

To:     Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc., and their attorneys:

> Michael S. Gardener
> Peter A. Biagetti
> Breton Leone-Quick
> Lisa A. Palin
> Kristen Scammon
> Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
> One Financial Center
> Boston, MA  02111

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take

the deposition upon oral examination of Defendants Quest Diagnostics Incorporated and/or

Nichols Institute Diagnostics, Inc. The deposition will take place on March 8, 2011 at Douglas &

London, P.C., 111 John Street, Suite 1400, New York, New York 10038, or another location

mutually agreed upon by the parties, and will continue from day to day thereafter until completed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate one or more officers, directors, managing agents, and/or other persons who consent to testify on its behalf regarding the below-listed subject matters that are known or reasonably available to Defendants and regarding the documents identified in Exhibit "A".

The deposition shall be taken before a notary public or another officer authorized by law to administer oaths. The deposition will be recorded by stenographic means.

Dated: New York, New York
        February 10, 2011

Respectfully submitted,

Gregory Hach, Esq.
Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax:  (212) 779-0028

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
David B. Franco, Esq.
DUGAN LAW FIRM
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax:  (504) 648-0181

Michael A. London, Esq.
Virginia E. Anello, Esq.

2

DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

## Definitions and Instructions

The following definitions apply to this Notice of Deposition, including those matters set forth in Exhibit A hereto, and are deemed to be incorporated into each subject and request for documents listed below:

1.     "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics, Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their predecessors, subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc.  The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

2.     "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2). Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters,

4

envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

3.    "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

4.    "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

5.    "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

5

6.      "Person" is defined as any natural person or any business, legal or governmental entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

7.      "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

8.      "Purchase and/or Acquisition" refers to the transfer, purchase, merger, sale, acquisition, ownership, right to control, lease, procurement, and any transaction or act relative to the sale, purchase and acquisition of equity, assets and/or liabilities of Nichols Institute Diagnostic, Inc. in 1994 by MetPath, Corning Incorporated, Corning Clinical Laboratories Inc. or any of their subsidiaries, affiliates, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with MetPath, Corning Incorporated or Corning Clinical Laboratories Inc.

9.      "Quest Spin-off" refers to Corning Clinical Laboratories Inc.'s spin off on or about December 31, 1996 of its laboratory testing business establishing Defendant Quest.

10.      "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

11.      "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

12.      "Sales and marketing materials" refer to and include advertising, promotional,

6

sales and marketing materials, all of which include but are not limited to all print, internet, and broadcast advertisements, sales aids, visuals, sales scripts, question and answer guides, sales implementation and resource guides, reminders pieces, promotional items, Quest and/or Nichols business summaries, package inserts, directional inserts, endocrine resource guides, and any and all other materials relating to sales and marketing."

13.     "Or" and "and" will be used interchangeably.

14.     Unless otherwise indicated, the "Relevant Period" for the information sought is 2000 to the present.

### Deposition Subject Matter

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

### Sales and Marketing Corporate Structure

1.     The corporate organization and structure of the Defendants' departments or divisions responsible for the sales, marketing, advertising and promotion of the Defective Nichols Kits.

2.     The corporate organization and structure of the Defendants' departments or divisions responsible for the sales, marketing, advertising and promotion of the Defective Nichols Kits to third-party payors, managed care organizations, hospitals, U.S. Veterans Administration hospitals, clinical laboratories, diagnostic testing facilities, Quest Diagnostic, Inc. laboratories, physicians, national and regional medical device distributors, direct medical device distributors, state Medicaid programs, Federal Medicaid and Medicare.

3.     The corporate organization and structure of the Defendants' departments or

7

divisions responsible for the training of sales representative and account executives concerning the sale, marketing, advertising and promotion of the Defective Nichols Kits.

**Identity of Witnesses**

4.     The identity of all persons within Quest and/or Nichols (including but not limited to their titles, duties and dates held), and the identity of all committees, advisory boards and the like (including but not limited to their names, responsibilities, dates of operation and the identity of their members), who/which were, or are, responsible during the Relevant Time Period for the sales, marketing, advertising and promotion of Defective Nichols Kits from the time the Defective Nichols Kits were developed to the present, including but not limited to:

   a.   The development and implementation of sales, marketing, promotion and advertising strategies, methods and messages regarding Defective Nichols Kits;

   b.   The substantive preparation and approval of sales, marketing, promotional and advertising materials regarding Defective Nichols Kits;

   c.   The preparation and design of the Defective Nichols Kits sales aid implementation and resource guides, Quest or Nichols business summaries, reminder pieces, voucher programs, question and answer guides, obstacle responses, package inserts, directional inserts, and endocrine resource guides and materials;

   d.   Market research regarding the Defective Nichols Kits and the conditions it was used to diagnose, monitor, test and/or treat;

   e.   The substantive preparation and approval of training materials for use in training account executives, sales representatives or detail people

8

concerning the sale or promotion of Defective Nichols Kits;

f.   The implementation and coordination of training for account executives and sales representatives concerning the sale or promotion of Defective Nichols Kits;

g.   The monitoring and oversight to ensure compliance by Defendants' account executives, sales representatives, and detail people for compliance with Defendants' procedures and guidelines for the marketing, sale and promotion of Defective Nichols Kits;

h.   The monitoring and oversight of Defendants' sales, marketing and promotional efforts regarding the sale, marketing and promotion of Defective Nichols Kits for non-approved diagnostic tests;

i.   The development, retention, compensation, oversight and monitoring of Defendants' speaker bureau members, consultants, thought leaders and opinion leaders (including but not limited to doctors, diagnostic laboratory specialists, endocrinologist, nephrologists and other healthcare providers who receive some form of payment or remuneration from Defendants, or an organization funded in whole or in part by Defendants, for the purpose of preparing articles for publication or public speaking) concerning the Defective Nichols Kits for the conditions or symptoms it diagnoses, monitors, tests and/or treats;

j.   The development and planning of Defendants' regional and national sales conferences concerning Defective Nichols Kits;

5.   The identity of Defendants' national account executives, account executives, sales

9

representatives, and detail persons, including but not limited to their titles, duties, sales territories, accounts, supervisors, dates of employment, dates territories and accounts held, and any dates their employment ceased or was terminated.

**Sales and Marketing Contractors and Consultants**

6.      The identity of all persons (including their employers and titles) or entities (including their names and last known addresses) with whom Defendants contracted, consulted or retained concerning Defective Nichols Kits, the nature of the work done by those persons or entities, and the time period of the relationship which relate to the sale, marketing, advertising or promotion of Defective Nichols Kits, including but not limited to:

      a.      Contract sales forces;

      b.      Sales force training;

      c.      Sales, marketing, promotion and advertising strategies, methods and messages;

      d.      Market research;

      e.      The supply of marketing information, including but not limited to diagnostic laboratory testing and the manner in which Defective Nichols Kits are performing in the market;

      f.      The preparation and design of marketing, sales, promotional, and advertising material including but not limited to Defective Nichols Kits sales aid implementation and resource guides, Quest or Nichols business summaries, reminder pieces, voucher programs, question and answer guides, obstacle responses, package inserts, directional inserts and endocrine resource guides and materials.

10

**Promotion to Healthcare Providers**

7.      The corporate structure and organization of Defendants and Defendants' strategy and manner of promotion concerning the sale, marketing, advertising and promotion of Defective Nichols Kits to the following:

      a.      Endocrinologists, nephrologists and other specialist health care providers;

      b.      Primary care physicians;

      c.      Physician assistants and nurse practitioners;

      d.      Quest Diagnostics, Inc. laboratories;

      e.      Independent diagnostic testing laboratories

      f.      Clinical laboratories;

      g.      Hospitals;

      h.      Managed care organizations;

      i.      Any other healthcare providers for which there was a separate structure, organization, strategy or manner of promotion concerning the sale, marketing, advertising or promotion of Defective Nichols Kits to such providers.

**Promotion to Medical Device/Equipment Distributors**

7.      The corporate structure and organization of Defendants and Defendants' strategy and manner of promotion concerning the sale, marketing, advertising and promotion of Defective Nichols Kits to the following:

      a.      National medical device distributors;

      b.      Direct medical device distributors;

      c.      Regional medical device distributors;

11

d.   Any other medical device distributorship for which there was a separate structure, organization, strategy or manner of promotion concerning the sale, marketing, advertising or promotion of Defective Nichols Kits to such providers.

**International Sales, Marketing and Promotion of Defective Nichols Kits**

8.   Defendants' corporate organization and structure concerning the sale, marketing, advertising and promotion of Defective Nichols Kits outside the United States.

9.   The identity of Defendants' corporate officers and managers both within and outside the United States who were or are responsible for sales, marketing, advertising and promotion of Defective Nichols Kits outside the United States.

10.   The identity of all third party consultants and entities with whom Defendants consulted regarding the sale, marketing, advertising or promotion of Defective Nichols Kits outside the United States, and the nature and dates of their responsibilities.

11.   The identity of all foreign partners, joint ventures, co-promoters and the like for the sale and marketing of Defective Nichols Kits in countries other than the United States.

**Sales and Marketing Materials Identity and Organization**

12.   The manner in which advertising, and promotional, sales, and marketing materials regarding Defective Nichols Kits are organized and numbered, the location of exemplars of such materials, and the manner in which the dates of approval and use of such materials may be identified.   As used in this Notice, advertising, promotional, sales and marketing materials include but are not limited to all print, internet, and broadcast advertisements, sales aids, visuals, sales scripts, question and answer guides, sales implementation and resource guides (including but not limited to endocrine resource guides), reminder pieces, promotional items, package

12

inserts, directional inserts, Quest or Nichols business summaries, voucher programs, and any and all other materials.

**Practices and Procedures**

13.     The manner in which sales, marketing, advertising and promotional materials regarding Defective Nichols Kits are approved by Defendants for use or distribution, including the identity of departments and individuals involved in approval, the data required for approval, and regulatory guidance used.

14.     The manner in which information regarding sales, marketing, and detail visits to doctors, hospitals, medical laboratories, diagnostic testing facilities, managed care organizations, and healthcare providers from 2000 to present have been and are recorded and organized, including but not limited to:

      a.    The date of the visit;

      b.    The identity of any and all sales materials that are left with medical laboratories, doctor or healthcare providers, or their staff members;

      c.    All manner and procedures for recording the length of the visit and the substance of the information provided to medical laboratories, the doctor or healthcare providers, or their staff members;

      d.    The location and manner of storage of all documents regarding sales visit information.

15.     The manner in which information regarding sales, marketing, and detail visits to national, regional and direct medical device distributors and any other medical device distributorship from 2000 to present have been and are recorded and organized, including but not limited to:

a.   The date of the visit;

b.   The identity of any and all sales materials that are left with the national, regional or direct medical device distributors, or their staff members;

c.   All manner and procedures for recording the length of the visit and the substance of the information provided to national, regional or direct medical device distributors, or their staff members;

d.   The location and manner of storage of all documents regarding sales visit information.

**Government Warnings/Actions Regarding Defective**
**Nichols Kits Marketing and Promotion**

16.   Defendants' interactions with the FDA regarding warning letters, notice of violation letters and untitled regulatory letters from the FDA's Division on Medical Device Safety concerning Defective Nichols Kits, and Defendant's responses thereto and actions thereon.

17.   The identity and nature of all warnings, objections or criticisms by any regulatory government entity or organization worldwide of any of Defendants' advertisements, promotional, sales, or marketing materials, strategies or practices, and Defendants' responses thereto and actions thereon.

**Thought Leaders/Consultants/Formulary Committee Members and/or Influencers**

18.   The identity of all of Defendants' speaker bureau members, consultants, thought leaders and opinion leaders (including but not limited to doctors, diagnostic laboratory specialist, endocrinologist, nephrologists, and other healthcare providers who receive or have received some form of payment or remuneration from Defendants, or an organization funded in whole or

14

in part by Defendants) concerning the Defective Nichols Kits, the conditions or symptoms for which it diagnoses, monitors, tests and/or treats.

19.     All policies, procedures and manner for the payment, compensation, remuneration or benefit to Defendants' speaker bureau members, consultants, thought leaders and opinion leaders (including but not limited to doctors, pharmacists, and other healthcare providers who receive some form of payment or remuneration from Defendants, or an organization funded in whole or in part by Defendants) concerning Defective Nichols Kits, the conditions or symptoms for which it diagnoses, monitors, tests and/or treats.

**Sample Kits**

20.     The manner and procedures used for accountability and tracking of the distribution of Defective Nichols Kit samples.

21.     The number (including by year), nature (including name and type of Nichols Kit), and nature of recipients (including a breakdown of areas of healthcare provider specialties and medical device distributors) of the Defective Nichols Kit samples that were distributed.

15

## EXHIBIT A – DOCUMENT REQUESTS

Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. (the "Witness") is requested to bring with him/her the following documents, whether held in her actual constrictive possession, on the extent not produced in response to prior discovery or other requests relating to his/her knowledge of the Defective Nichols Kits.

A complete copy of all documents, as that term is defined in the Federal Rules of Civil Procedure, tangible things, reports, models or data compilations that have been provided to, reviewed by, or prepared by or for the Witness in anticipation of his/her testimony. This request includes, but not limited to:

1.      The documents, data or other information considered by the Witness in preparation for her/his testimony relating to his/her knowledge of the Defective Nichols Kits.

2.      Exhibits to be used as a summary or in support of his/her testimony.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Rule 30(b)(6) Deposition to Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. have been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

Frank R. Schirripa

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS, INC.<br><br>Defendants. | 10-CV-1692 (RJD)(RLM) |

**PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS QUEST DIAGNOSTICS INC. AND NICHOLS INSTITUTE DIAGNOSTICS INC. CONCERNING THE PURCHASE AND/OR ACQUISITION OF NICHOLS INSTITUTE DIAGNOSTICS, INC., THE FORMATION OF QUEST DIAGNOSTICS INC. AND THE DISCONTINUATION OF NICHOLS INSTITUTE DIAGNOSTICS**

To:   Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc., and their attorneys:

>      Michael S. Gardener
>      Peter A. Biagetti
>      Breton Leone-Quick
>      Lisa A. Palin
>      Kristen Scammon
>      Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
>      One Financial Center
>      Boston, MA  02111

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take

the deposition upon oral examination of Defendants Quest Diagnostics Incorporated and/or

Nichols Institute Diagnostics, Inc. The deposition will take place on March 2, 2011 at Douglas &

London, P.C., 111 John Street, Suite 1400, New York, New York 10038, or another location

mutually agreed upon by the parties, and will continue from day to day thereafter until completed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate one or more officers, directors, managing agents, and/or other persons who consent to testify on its behalf regarding the below-listed subject matters that are known or reasonably available to Defendants and regarding the documents identified in Exhibit "A".

The deposition shall be taken before a notary public or another officer authorized by law to administer oaths. The deposition will be recorded by stenographic means.

Dated: New York, New York
February 10, 2011

Respectfully submitted,

Gregory Hach, Esq.
Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax:  (212) 779-0028

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
David B. Franco, Esq.
DUGAN LAW FIRM
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone:  (504) 648-0180
Fax:  (504) 648-0181

Michael A. London, Esq.
Virginia E. Anello, Esq.

2

DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

**Definitions and Instructions**

The following definitions apply to this Notice of Deposition, including those matters set forth in Exhibit A hereto, and are deemed to be incorporated into each subject and request for documents listed below:

1.      "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics, Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their predecessors, subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc.   The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

2.      "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2). Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters,

4

envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

3.    "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

4.    "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

5.    "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

5

6.      "Person" is defined as any natural person or any business, legal or governmental entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

7.      "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

8.      "Purchase and/or Acquisition" refers to the transfer, purchase, merger, sale, acquisition, ownership, right to control, lease, procurement, and any transaction or act relative to the sale, purchase and acquisition of equity, assets and/or liabilities of Nichols Institute Diagnostic, Inc. in 1994 by MetPath, Corning Incorporated, Corning Clinical Laboratories Inc. or any of their subsidiaries, affiliates, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with MetPath, Corning Incorporated or Corning Clinical Laboratories Inc.

9.      "Quest Spin-off" refers to Corning Clinical Laboratories Inc.'s spin off on or about December 31, 1996 of its laboratory testing business establishing Defendant Quest.

10.     "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

11.     "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

12.     "Sales and marketing materials" refer to and include advertising, promotional,

6

sales and marketing materials, all of which include but are not limited to all print, internet, and broadcast advertisements, sales aids, visuals, sales scripts, question and answer guides, sales implementation and resource guides, reminders pieces, promotional items, Quest and/or Nichols business summaries, package inserts, directional inserts, endocrine resource guides, and any and all other materials relating to sales and marketing."

13.    "Or" and "and" will be used interchangeably.

14.    Unless otherwise indicated, the "Relevant Period" for the information sought is 2000 to the present.

<u>**Deposition Subject Matter**</u>

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

**Purchase and/or Acquisition of Defendant Nichols:**

·    1.    The corporate structure of Defendant Nichols immediately preceding the Purchase and/or Acquisition, including without limitation its ownership, all subsidiaries, divisions, affiliates, the identity of its board of directors, the identity of members of senior management, the location of all of Nichols offices, laboratories and facilities.

2.    The corporate structure of MetPath in 1994 prior to the Purchase and/or Acquisition, including without limitation its ownership, all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of MetPath offices, laboratories and facilities.

3.    The corporate structure of Corning Incorporated in 1994 prior to the Purchase and/or Acquisition, including without limitation its ownership, all subsidiaries, divisions,

7

affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of Corning Incorporated offices, laboratories and facilities.

      4.     The Purchase and/or Acquisition of Defendant Nichols,  including but not limited to:

        i.   The identity of the purchasing and/or acquiring entity;

      ii.   The consideration given, paid to and/or exchanged with Defendant Nichols;

    iii.   The structure of the transaction(s) by which Nichols was purchased and/or acquired;

    iv.   The identity of all Defendants' officers, agents, attorneys, employees, representatives or others acting on their behalf who/which were responsible for negotiating, structuring and/or closing the Purchase and/or Acquisition of Defendant Nichols; and

     v.   The identity and nature of documents concerning the Purchase and/or Acquisition of Nichols, including without limitation all agreements, contracts and/or other legal documents setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities  the acquiring entity and Nichols as well as any and all successors and assignees.

      5.     The corporate structure of Defendant Nichols immediately following the Purchase and/or Acquisition through the present, including without limitation its ownership, all subsidiaries, divisions, affiliates, the identity of its board of directors, the identity of members of

senior management, the location of all of Nichols offices, laboratories and facilities.

**Formation of Quest Diagnostics Inc.:**

6.　　The corporate structure of Corning Incorporated immediately following the Purchase and/or Acquisition through the Quest Spin-off, including without limitation its ownership, the identity of all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of Corning Incorporated offices, laboratories and facilities.

7.　　The corporate structure of MetPath immediately following the Purchase and/or Acquisition through the Quest Spin-off, including without limitation its ownership, the identity of all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of MetPath offices, laboratories and facilities.

8.　　The corporate structure of Corning Clinical Laboratories Inc. immediately following the Purchase and/or Acquisition through the Quest Spin-off, including without limitation its ownership, the identity of all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of Corning Incorporated offices, laboratories and facilities.

9.　　The identity and nature of documents concerning the formation of Corning Clinical Laboratories Inc. in 1994, including without limitation all agreements, contracts and/or other legal documents setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities of Defendant Nichols, Corning Incorporated and Corning Clinical Laboratories as well as any and all successors and assignees.

10.　　The corporate structure of Defendant Quest immediately following the Quest

9

Spin-off through the present, including without limitation its ownership, the identity of all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of Quest's and its subsidiaries' offices, laboratories and facilities.

11.     The identity and nature of documents concerning the Quest Spin-off, including without limitation all agreements, contracts and/or other legal documents setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities of Defendant Quest, Defendant Nichols, Corning Incorporated and Corning Clinical Laboratories as well as any and all successors and assignees.

**Discontinuation of Nichols Operations**

12.     The corporate structure of Defendant Quest immediately following the discontinuation of Nichols operations on or about April 19, 2006, including without limitation its ownership, the identity of all subsidiaries, divisions, affiliates, lines of business, the identity of its board of directors, the identity of members of senior management, the location of all of Quest's and its subsidiaries' offices, laboratories and facilities.

13.     The identity and nature of documents concerning the discontinuation of Nichols operations on or about April 19, 2006, including without limitation all agreements, contracts and/or other legal documents setting forth the purchase/sale, transfer or assumption of assets and/or liabilities, contractual rights, obligations, duties and/or responsibilities of Defendant Quest, Defendant Nichols, Corning Incorporated and Corning Clinical Laboratories as well as any and all successors and assignees.

## EXHIBIT A – DOCUMENT REQUESTS

Defendants are requested to produce the following documents to the undersigned in advance of the deposition date designated herein and within five (5) days of the date of the notice and to designate one or more corporate representatives who are most knowledgeable about such documents.

1.     The documents, data or other information considered by the Witness in preparation for her/his testimony relating to his/her knowledge of the foregoing subject matters.

2.     Exhibits to be used as a summary or in support of his/her testimony.

11

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Rule 30(b)(6) Deposition to Quest Diagnostics Inc. and Nichols Institute Diagnostics, Inc. have been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

_____
Frank R. Schirripa

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO:  10-CV-1692 |

Plaintiffs,

v.

QUEST DIAGNOSTICS INCORPORATED and
NICHOLS INSTITUTE DIAGNOSTICS, INC.

Defendants

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of New York, Plaintiffs propound the following Requests for Production of Documents upon Defendants, Quest Diagnostics, Incorporated ("Quest") and Nichols Institute Diagnostics, Inc. ("Nichols"). Plaintiffs request that Defendants respond in writing to the following Requests and produce or make available for inspection and copying the documents requested, within thirty (30) days at the offices of the Dugan Law Firm, One Canal Place, 365 Canal Street, Suite 1000, New Orleans, Louisiana 70130, or at another mutually agreed upon location.

## INSTRUCTIONS

1.      Unless otherwise specified, these document requests seek all responsive documents created, generated or received by you during the period of 2000 to the present date.

1

These document requests are continuing in nature, and you must supplement your production if you obtain or discover additional responsive documents prior to trial. Such supplementary responses are to be served upon Plaintiff within thirty (30) days after the discovery of any additional documents.

2.      Throughout these Requests, including the Definitions, the words used in the masculine gender include the feminine, and the words used in the singular include the plural.

3.      You must furnish all documents or things in your possession, custody or control, or which are otherwise available to you, regardless of whether such documents are possessed by you or your employees, agents, parent companies, subsidiaries, affiliates, investigators, predecessors, successors, representatives, or by your attorneys or their employees or investigators.

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, you must produce the documents requested as they are kept in the usual course of business or must organize and label them to correspond with each document request to which they are submitted as being responsive. If the requested documents are maintained in a paper file, you must also produce the file folder, folder tab or container, together with all labels and notations. Documents attached to each other should not be separated. If any portion of any document is responsive to any document request, then the entire document must be produced. In addition, specifically identify the location and custodian of each document produced by means of an index of production numbers.

5.      All production of documents maintained in electronic form shall be produced as searchable .pdfs with a load file pursuant to an electronic discovery protocol agreed upon by the parties.

6.      Production is sought regardless of whether the user purported to "delete" the document, if such document is capable of being retrieved or restored.

7.      If you cannot comply in full with any of the following Requests or with any of these instructions, you must comply to the extent possible and provide a detailed explanation as to why full compliance is not possible.

8.      With respect to each document withheld on a claim of privilege, work product, or any other purported immunity from discovery, state:

      i)      its author(s), and the name of the person to whom the document was sent if different from the author;

      ii)     its recipients(s);

      iii)    its date, place and manner of preparation;

      iv)    the number of its pages;

      v)     the paragraph number of the request to which the document is responsive;

      vi)    the specific basis on which the immunity from discovery is claimed; and

      vii)   the identity of each person to whom any of the contents of the document have been communicated or otherwise revealed.

9.      If you object to production on any basis other than privilege, state your objection(s) and indicate whether you are complying with the request in whole or in part.

10.     If any Request is objected to on grounds of over-breadth, specifically state the manner in which it is overly broad and respond to the Request as narrowed to conform to such objection. If you cannot respond fully, or if you object in part, to any of these Requests, you are

3

nevertheless required to respond to the remaining portions to the extent that you are capable of doing so.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.    Wherever the word "including" appears, the meaning intended is "including, but not limited to."

2.    The terms "and" and "or" shall be construed both conjunctively and disjunctively.

3.    The term "Quest," and/or "Nichols," means Defendants Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc. and any of its subsidiaries, affiliates, officers, agents, attorneys, employees, representatives, or others acting on its behalf.

4.    "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics, Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc. The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

5.    Person" is defined as any natural person or any business, legal or governmental entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

6.     "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

7.     "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

8.     "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

9.     "Agreement" means a contract, arrangement or understanding, formal or informal, oral or written, between two or more persons.

10.     "Purchase and/or Acquisition" refers to the transfer, purchase, merger, sale, acquisition, ownership, right to control, lease, procurement, and any transaction or act relative to the sale, purchase and acquisition of equity, assets and/or liabilities of Nichols Institute Diagnostic, Inc. in 1994 by MetPath, Corning Incorporated, Corning Clinical Laboratories Inc. or any of their subsidiaries, affiliates, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with MetPath, Corning Incorporated or Corning Clinical Laboratories Inc.

11.     "Quest Spin-off" refers to Corning Clinical Laboratories Inc.'s spin off on or about December 31, 1996 of the laboratory testing business establishing Defendant Quest.

5

12.    "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

13.    "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

14.    "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2).  Consistent with the above definition, the term document shall include, without limitation, any statement, paper, writing, letter, memorandum, report, log book, note, article, magazine, journal, journal article, newsletter, blueprint, drawing, design, sketch, book, textbook, brochure, laboratory record, audio or video tape, record, recording, photograph, moving picture, negative, calendar, diary, message or log of telephone calls, facsimile transmissions (including cover sheets and confirmations), sales, advertising or promotional literature or materials, and any other object containing a written, printed, spoken or photographic image or sound.

In addition, the term "document" includes "electronic data", which means the original and any non-identical copies and drafts of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or remarks, program change logs and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers,

6

peripheral drivers, PRF files, HTML files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active, deleted file or file fragment.

15.    "Database" shall mean any computerized system used to store, collect, manage, access, organize, report on, track or otherwise record data or information regardless of whether a Database Management System ("DBMS") is utilized and regardless of whether the data is contained in a relational or otherwise structured configuration.

16.    The term "Payment" shall mean a payment of money or money's worth in goods or services, including but not limited to any form of remuneration, grant, honorarium, speaker fee, gift, grant, free travel or accommodation, compensation or other benefit, and includes Indirect Payments and Indirect Funding.

17.    The term "Indirect funding" shall mean the funding of an activity or event useful to Defendant's medical business, when such activity or event was not directly paid for by the Defendants, but was paid for by a person or vendor with whom the Defendants have contracted, and one of the expected services with the contracting party was the funding of such activities and events.

18.    The term "Indirect payments" shall mean payments made to a third party by or through a person or vendor that has directly contracted with the Defendants where one of the expected services provided by the contracting party is the payment of third parties who are providing services useful to Defendant's medical business.

19.    "Vendor" shall mean an entity which, in the ordinary course of its business, provides one or more of the following services to healthcare entities: (a) assistance in organizing,

7

coordinating, planning or managing meetings or events; (b) assistance in writing, editing, placing, publishing or distributing medical articles or medical publications; or (c) assistance or consultation with marketing.

## DOCUMENT REQUESTS

### REQUEST NO. 1:

Please produce all electronic coding databases, spreadsheets and other similar compilations with respect to documents relating to communications between the Defendants and Distributors and/or Health Care Providers (whether during sales calls, sales visits, detailing or otherwise) concerning the Defective Nichols Kits.

RESPONSE:

### REQUEST NO. 2:

Please produce all call notes and databases and/or call note databases between Defendants' sales marketing personnel and health care providers, distributors, hospitals, health insurance companies, and/or third party payors concerning the Defective Nichols Kits.

RESPONSE:

### REQUEST NO. 3:

Please produce all documents, software and data purchased and/or received from data gathering firms (e.g. Scott/Levin, Competitive Media Reporting, Medimedia) including, but not limited to, any and all data analysis for the Defective Nichols Kits and/or its competitor diagnostic testing kits.

RESPONSE:

**REQUEST NO. 4:**

Please produce all documents produced by you, whether voluntarily or involuntarily, concerning any governmental investigation initiated by any governmental entity, including, the United States Senate, the United States House of Representatives, the United States Food and Drug Administration ("FDA"), U.S. Department of Health & Human Services Office of Inspector General, the United States Department of Justice, including specifically but without limitation the U.S. Attorney's Office for the Eastern District of New York, and any state Attorney General regarding investigations that relate to the development, manufacture, testing, marketing, sales or distribution of Defective Nichols Kits.

RESPONSE:

**REQUEST NO. 5:**

Please produce all documents reflecting requests, whether formal or informal, for documents and/or information from any governmental agency as part of any governmental investigation involving the Defective Nichols Kits.

RESPONSE:

**REQUEST NO. 6:**

Please produce all documents relating to third-parties, contractors, or other individuals retained, or otherwise hired, by Defendants including but not limited to any co-promotion

9

agreement between Defendants and any medical device Distributors to promote, detail, sell, market, or otherwise communicate information regarding the Defective Nichols Kits in the United States during the period 2000 to the present.

RESPONSE:


**REQUEST NO. 7:**

Please produce all documents reflecting support or sponsorship of trials, studies, physicians, hospitals, diagnostic laboratory facilities, or other research funding provided by Defendants with regard to the Defective Nichols Kits.

RESPONSE:


**REQUEST NO. 8:**

Please produce all documents reflecting Your standard operating procedures for clinical and/or medical investigation and documentation for the studies relating to the Defective Nichols Kits.

RESPONSE:


**REQUEST NO. 9:**

Please produce all documents relating to any training seminars held by "You" or on "Your" behalf for medical professionals regarding the uses and/or sales, marketing and promotion of the Defective Nichols Kits.

RESPONSE:

10

**REQUEST NO. 10:**

Please produce all documents which relate to, refer to, or discuss any and all publications, journal articles, scholarly writings, medical articles, peer review articles, or other articles regarding the Defective Nichols Kits that were otherwise transmitted by "You" or any entity with whom you are affiliated, during the period 2000 to the present.

RESPONSE:

**REQUEST NO. 11:**

Please produce all press releases or company announcements concerning the approval, benefits, risks, efficacy, accuracy, pricing, attributes, or qualities of the Defective Nichols Kits.

RESPONSE:

**REQUEST NO. 12:**

Please produce all communications with Defendants' sales employees, agents, and/or representatives regarding or relating to the training, advertising, promotions, positioning, and marketing of the Defective Nichols Kits including, without limitation, detail kits, suggested questions and answers for Health Care Providers and Distributors, any videos, slide presentations, or other training materials.

RESPONSE:

**REQUEST NO. 13:**

Please produce all documents showing the quarterly domestic sales of the Defective Nichols Kits, in both number of diagnostic kits sold and in gross dollar amounts for each Defective Nichols Kit.

RESPONSE:

**REQUEST NO. 14:**

Please produce all invoice level data, accounting data, and/or periodic summaries of such data quantifying unit sales of all Defective Nichols Kits differentiated by diagnostic kit and purchaser: third party payors, diagnostic laboratories, consumers, health insurance providers, or otherwise.

RESPONSE:

**REQUEST NO. 15:**

Please produce all documents reflecting projections of sales, market size and/or market share of the Defective Nichols Kits by each diagnostic kit.

RESPONSE:

**REQUEST NO. 16:**

Please produce all documents and things, including videotapes, CDs and DVDs or any other medium for storing video and audio recordings, other typewritten materials and computer-generated materials (e.g., PowerPoint presentations), whether prepared by you or not, concerning

12

annual or semi-annual sales or marketing meetings, relating in any part to the Defective Nichols Kits.

RESPONSE:


**REQUEST NO. 17:**

Please produce all documents and things, including videotapes, CDs and DVDs or any other medium for storing video and audio recordings, other typewritten promotional materials and computer generated materials (e.g., PowerPoint presentations), whether prepared by you or not, used in conjunction with marketing to and/or provided to prescribers and/or distributors and purchasers (including hospitals and diagnostic laboratories), health insurance companies and/or third party payors in reference to the Defective Nichols Kits.

RESPONSE:


**REQUEST NO. 18:**

Please produce all communications to third party payors, doctors, health care providers, medical device distributors or consumers relating to the superiority of the Defective Nichols Kits over other diagnostic kits, or otherwise comparing the Defective Nichols Kits to other diagnostic kits.

RESPONSE:


13

**REQUEST NO. 19:**

Please produce all organizational charts, databases, and/or spreadsheets that show how the company departments are organized including but not limited to the marketing and sales departments.

RESPONSE:


**REQUEST NO. 20:**

Please produce all documents containing any information relating to any agreement and/or contract concerning the Purchase and/or Acquisition of Nichols Institute Diagnostic, Inc, including without limitation, all agreements, contracts and/or other legal documents, setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities of the acquiring entity and Nichols as well as any and all successors and assignees.

RESPONSE:


**REQUEST NO. 21:**

Please produce all documents containing any information relating to any agreement and/or contract concerning the Quest Spin-off, including without limitation all agreements, contracts and/or other legal documents setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities of Defendant Quest, Defendant Nichols, Corning Incorporated and Corning Clinical Laboratories as well as any and all successors and assignees.

RESPONSE:

14

**REQUEST NO. 22:**

Please produce all documents containing any information relating to any agreement and/or contract concerning the discontinuation of Nichols operations on or about April 19, 2006, including without limitation all agreements, contracts and/or other legal documents setting forth the purchase/sale, transfer or assumption of assets and/or liabilities, contractual rights, obligations, duties and/or responsibilities of Defendant Quest, Defendant Nichols, Corning Incorporated and Corning Clinical Laboratories as well as any and all successors and assignees.

RESPONSE:

Date:    February 10, 2011
         New York, New York

By:
         **HACH & ROSE, LLP**

         Gregory Hach, Esq.
         Michael A. Rose, Esq.
         Frank R. Schirripa, Esq.
         HACH & ROSE, LLP
         185 Madison Avenue, 8th Floor
         New York, NY 10016
         Telephone: (212) 779-0057
         Fax:  (212) 779-0028


         James R. Dugan, II, Esq.
         Douglas R. Plymale, Esq.
         David B. Franco, Esq.
         DUGAN LAW FIRM
         One Canal Place
         365 Canal Street, Suite 1000
         New Orleans, LA 70130
         Telephone:  (504) 648-0180
         Fax:  (504) 648-0181

15

Michael A. London, Esq.
Virginia E. Anello, Esq.
Matthew S. Schoen, Esq.
DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' First Request for the Production of Documents has been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

Frank R. Schirripa

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS INC., <br><br> Defendants. | CIVIL ACTION NO:  10-CV-1692 |

## PLAINTIFFS' INTERROGATORIES TO DEFENDANTS QUEST DIAGNOSTICS INC. AND NICHOLS INSTITUTE DIAGNOSTICS INC.

PLEASE TAKE NOTICE that Plaintiff hereby propounds the following Interrogatories to Defendants Quest Diagnostics Incorporated ("Quest") and Nichols Institute Diagnostics Inc. ("Nichols"), pursuant to the Federal Rules of Civil Procedure, and request Defendants to answer these Interrogatories under oath within thirty (30) days of the service hereof. The following definitions and instructions are to be applied to all the Interrogatories contained herein.

## INSTRUCTIONS

1.     Each Interrogatory refers to information in the custody, control and possession of Defendants, or known to Defendants, as well as in the custody, control and possession of or known to Defendant's counsel, representatives, agents, servants, investigators, consultants,

barristers, advocates and any other third parties retained or paid by Defendants or its counsel, employees, representatives, agents, servants, investigators, barristers, advocates, and consultants.

2.      When asked to identify a person, or if the response involves a person, for each person state the full name, business title and the current or last known home and business addresses and telephone numbers.

3.      When asked to identify a communication, or if an answer involves a communication, for each communication state the parties to the communication, the nature of the communication (e.g., written, oral or recorded), witnesses to the communication and the substance of the communication.

4.      When asked to identify a document, or when an answer involves a document, state the person who wrote, composed or created the document, the intended recipients, the date originated, the date sent, the date received, all persons having copies of the document and the subject matter and content. In lieu of identifying a document, a copy of the document may be attached to these responses.

5.      For each Interrogatory, identify any persons providing information and state whether the response is based on the personal knowledge of the person providing the information. If the response is not based on the personal knowledge of the person providing the information, identify the sources (e.g. persons and documents) of that information.

6.      If information contrary to that provided in an answer was provided by any person to the person providing the answer, or to your attorneys, identify each person providing conflicting information, state the conflicting information and state the reasons the conflicting information was not relied upon.

7.      For each answer, identify all documents that you believe support your response.

8.      These Interrogatories shall be deemed continuing, to the full extent required or permitted under the Federal Rules of Civil Procedure, so as to require supplementary responses as soon as practical after you receive information which renders any of your answers to these Interrogatories incomplete or inaccurate.

9.      If you cannot answer the following Interrogatories in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions, and to the best of your knowledge the names, addresses and telephone numbers of all persons and organizations where such information is, will be or is believed to be.

10.     In answering these Interrogatories, you are requested to answer each demand and subdivision thereof fully, completely and separately. You are hereby notified that at least as to those demands that are unanswered or as to which you claim an inability to answer fully and completely for the reason that discovery is continuing, the undersigned will apply to the court for an order directing that these demands be deemed continuing; that upon acquiring any information response thereto after the service of answers hereto, you will be required to serve supplemental answers containing such later acquired information; and that you will be precluded at the trial of this action from introducing evidence relating to the subject matter of these demands which you have not disclosed by these answers or by supplemental answers thereto.

11.     If any Interrogatory is deemed to call for the production of privileged or otherwise protected information or materials, you must provide the following information in a written response, designating and identifying such information withheld from production on grounds of privilege:

3

(a)     The reason for withholding the information;

(b)     A statement of the legal basis for the claim of privilege, work product, or other ground for nondisclosure;

(c)     A brief description of the information, including:

    (i)      The date;

    (ii)     The number of pages, attachments, and appendices if a document;

    (iii)    The name(s) of the source(s) or preparer(s) of the information and identification by employment and title of each such person;

    (iv)    The name of each person who was involved with or has had access to or custody of the information, together with an identification of each such person;

    (v)     The present custodian(s); and

    (vi)    The subject mater of the information, and in the case of any information relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

12.     The "Relevant Time Period" referred to in these requests are defined as 2000 through present. This period includes all documents and information that relate or apply in whole or in part to such period, events or circumstances during this period, even if dated, prepared, generated or received before the period. Unless otherwise stated, all Interrogatories are limited to the Relevant Time Period.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.      The term "Quest," and/or "Nichols," means Defendants Quest Diagnostics Incorporated and Nichols Institute Diagnostics, Inc. and any of its subsidiaries, affiliates, officers, agents, attorneys, employees, representatives, or others acting on its behalf.

2.      "You," "Your," "Yours," or "Defendants" means and/or refers to Defendants Quest Diagnostics Incorporated (hereinafter referred to as "Quest") and Nichols Institute Diagnostics,

Inc. (hereinafter referred to as "Nichols"), individually and collectively, as well as all any of their predecessors, subsidiaries, affiliates, officers, agents, attorneys, employees, servants, representatives partners, directors, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with Quest and/or Nichols, including without limitation MetPath Inc., Corning Incorporated and Corning Clinical Laboratories Inc. The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or other representatives.

3.     "Person" is defined as any natural person or any business, legal or governmental entity or association, as set forth in Local Rule of the Eastern District of New York 26.3(c)(6).

3.     "Defective Nichols Kits" includes the following products: Advantage iPTH Kits, Bio-Intact PTH Kits, Advantage 25 OH-D Kits, Advantage ACTH Kits, and Advantage DHEA-S Kits manufactured, marketed, sold and/or used by Defendants.

4.     "Purchase and/or Acquisition" refers to the transfer, purchase, merger, sale, acquisition, ownership, right to control, lease, procurement, and any transaction or act relative to the sale, purchase and acquisition of equity, assets and/or liabilities of Nichols Institute Diagnostic, Inc. in 1994 by MetPath, Corning Incorporated, Corning Clinical Laboratories Inc. or any of their subsidiaries, affiliates, joint ventures, and/or other representatives acting on their behalf, including all corporations and/or entities affiliated with MetPath, Corning Incorporated or Corning Clinical Laboratories Inc.

5.     "Health Care Providers" means persons employed in the health care industry including but not limited to endocrinologists, nephrologists, primary care physicians, physician assistants, nurse practitioners, medical and clinical laboratories, diagnostic testing laboratories, Quest

5

Diagnostics, Inc. laboratories, hospitals, managed care organizations, state Medicaid programs, and Federal Medicaid and Medicare.

6.      "Distributors" means any persons and/or entities in the medical device and equipment distribution industry including but not limited to national, regional, and direct distributors of medical device and equipment to health care providers.

7.      "Agreement" means a contract, arrangement or understanding, formal or informal, oral or written, between two or more persons.

8.      "Document" or "Documents" shall have the broadest possible meaning pursuant to Fed. R. Civ. P. 34(a) and Local Rule of the Eastern District of New York 26.3(c)(2).  Consistent with the above definition, the term document shall include, without limitation, any original, reproduction or copy and non-identical copy (i.e., copy with marginal notes, deletions, etc.) of any kind of written, printed, typed, electronically created or stored or other graphic matter of any type, documentary material or drafts thereof, regardless of origin or location.  Such "document(s)" shall include, but are not limited to, any correspondence, memoranda, books, interoffice or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, e-mails, photographs, photomicrographs, microfilm, medical and hospital records and reports, x-ray photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations and notes of any oral communications, pamphlets, periodicals, letters, telegraphs, statements, records, bulletins, circulars, brochures, studies, instructions, working papers, charts, work assignments, drawings, prints, flow sheets, graphs, invention disclosures, drafts, advertisements, catalogs, paper, indices, tapes, data sheet or data processing material, or any

6

handwritten, recorded, transcribed, punched, taped, filmed or graphic matter, however, produced or reproduced in Defendant's possession, custody or control or to which Defendants have access.

9.      "Communication" or "communicate" mean the oral, written, electronic or other transfer of information (in the form of facts, ideas, inquiries or otherwise) as set forth in Local Rule of the Eastern District of New York 26.3(c)(1).

10.     "Concerning" means relating to, referring to, describing, discussing, evidencing or constituting, as set forth in Local Rule of the Eastern District of New York 26.3(c)(7).

11.     "Database" shall mean any computerized system used to store, collect, manage, access, organize, report on, track or otherwise record data or information regardless of whether a Database Management System ("DBMS") is utilized and regardless of whether the data is contained in a relational or otherwise structured configuration.

12.     The term "Payment" shall mean a payment of money or money's worth in goods or services, including but not limited to any form of remuneration, grant, honorarium, speaker fee, gift, grant, free travel or accommodation, compensation or other benefit, and includes Indirect Payments and Indirect Funding.

13.     The term "Indirect funding" shall mean the funding of an activity or event useful to Defendant's medical business, when such activity or event was not directly paid for by the Defendants, but was paid for by a person or vendor with whom the Defendants have contracted, and one of the expected services with the contracting party was the funding of such activities and events.

14.     The term "Indirect payments" shall mean payments made to a third party by or through a person or vendor that has directly contracted with the Defendants where one of the expected

7

services provided by the contracting party is the payment of third parties who are providing services useful to Defendant's medical business.

15.    "Vendor" shall mean an entity which, in the ordinary course of its business, provides one or more of the following services to healthcare entities: (a) assistance in organizing, coordinating, planning or managing meetings or events; (b) assistance in writing, editing, placing, publishing or distributing medical articles or medical publications; or (c) assistance or consultation with marketing.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify each database that records, maintains or stores data relating to communications between the Defendants and Distributors and/or Health Care Providers (whether during sales calls, sales visits, detailing or otherwise) relating to the Defective Nichols Kits, setting forth the name of the database, the fields of data stored in the database, and the manner in which an electronic copy can be obtained.

### INTERROGATORY NO. 2:

Please identify all databases within Defendant's control containing any information relating to the Defective Nichols Kits.

### INTERROGATORY NO. 3:

Please identify each database that records, maintains or stores data relating to Payments to Health Care Providers including but not limited to physicians, medical laboratories, hospitals and diagnostic testing facilities relating to the Defective Nichols Kits, setting forth the name of the database, the fields of data stored in the database, and the manner in which an electronic copy can be obtained.

**INTERROGATORY NO. 4.:**

Please identify each database that records, maintains or stores data relating to Payments to Distributors including but not limited to national, regional, and direct distributors relating to the Defective Nichols Kits, setting forth the name of the database, the fields of data stored in the database, and the manner in which an electronic copy can be obtained.

**INTERROGATORY NO. 5:**

Please identify each database that records, maintains or stores data relating to the Defective Nichols Kits data, sales tracking data, or trending data, setting forth the name of the database, the fields of data stored in the database, and the manner in which an electronic copy can be obtained.

**INTERROGATORY NO. 6:**

Please state the amount of Defective Nichols Kit sales, in both number of diagnostic kits and in gross dollar amounts, and Defendant's gross income earned from the sale of the Defective Nichols Kits, whether actual, partial, estimated or derived from data received from a third party that sells or otherwise makes such data available in the ordinary course of its business, broken down by diagnostic kit for each calendar quarter and year during the Relevant Time Period, identifying the source of such sales data and form (i.e. electronic, hardcopy, etc.) in which it was retrieved.

**INTERROGATORY NO. 7:**

Please identify each committee, board, council, team, group, working group, or other collection of employees which during the Relevant Time Period, whether in whole or in part,

was charged with the responsibility of or was authorized to engage in, formulating marketing plans, marketing strategies, marketing tactics, marketing development strategies, conducting diagnostic testing decision analysis, making recommendations whether to seek regulatory approval, and setting or allocating marketing budgets for the Defective Nichols Kits, setting forth the name of said committee, board, council, team, group, working group, or other collection of employees, the identity of each person who was a member thereof, and the location of the meeting minutes, reports, analyses, marketing plans, and/or budgetary plans which were produced thereby.

**INTERROGATORY NO. 8:**

Please identify all national marketing strategies adopted, pursued, formulated, planned, and/or implemented by the Defendants for the Defective Nichols Kits during the Relevant Time Period, setting forth:

      (a)     the title of each strategy;

      (b)     a description of the goals of each strategy;

      (c)     the expected, estimated or forecasted cost of implementing each strategy;

      (d)     the expected, estimated or forecasted profit for implementing each strategy; and

      (e)     the amounts budgeted at the national and regional levels to pursue each strategy.

**INTERROGATORY NO. 9:**

With respect to each marketing strategy identified in response to Interrogatory No. 8 ("Identified Strategy"), please identify all national or regional marketing strategies and tactics adopted, pursued, formulated, planned, and/or implemented by the Defendants during the Relevant Time Period in order to execute, pursue or implement said Identified Strategy, setting forth:

      (a)     the title of the marketing strategies and tactics;

(b)     a description of the goals of the marketing strategies and tactics;

(c)     the expected, estimated or forecasted cost of implementing the marketing strategies and tactics;

(d)     the expected, estimated or forecasted profit for implementing the marketing strategies and tactics; and

(e)     the amounts budgeted at the national and regional levels to pursue the marketing strategies and tactics.

## INTERROGATORY NO. 10:

Please identify each employee, executive, or officer of the Defendants who directed, managed, supervised, reviewed, assessed, or had authority or managerial responsibility over the development, design, formulation, creation, or review of Defendant's national marketing strategy for the Defective Nichols Kits, or the creation, allocation, determination or forecasting of budgeting in connection therewith, setting forth the full name and title of said employee, executive, or officer, his or her residential and business addresses, and the department he or she worked in.

## INTERROGATORY NO. 11:

Please identify all training and educational programs that discussed the Defective Nichols Kits sponsored in whole or in part by You or Your agents.

## INTERROGATORY NO. 12:

Please state whether You or Your agents presented payments, honoraria, and/or gifts out of funds budgeted for Defective Nichols Kits promotion.

## INTERROGATORY NO. 13:

Please identify each "Thought Leader" or consultant for Defective Nichols Kits designated by You or Your agents.

## INTERROGATORY NO. 14:

11

Please state the amount budgeted by Defendants for promotion of the Defective Nichols Kits for each quarter, and please state the amounts spent each quarter.

**INTERROGATORY NO. 15:**

Please identify all outside Vendors or third parties including but not limited to physicians, endocrinologists and diagnostic laboratory specialists retained by Defendants to (i) communicate directly with Health Care Providers concerning the Defective Nichols Kits, (ii) arrange for or promote Health Care advocates for Defective Nichols Kits, (iii) arrange for or promote educational sessions and other programs concerning Defective Nichols Kits that were attended by Health Care Providers, (iv) arrange for, organize, or promote clinical studies of Defective Nichols Kits; and for each vendor and/or third party describe and identify all documents setting forth the full scope of the duties and obligations under its agreement with Defendants to provide these services.

**INTERROGATORY NO. 16:**

Please identify all medical device Distributors or third parties including but not limited to national, regional, and direct medical device distributors retained by Defendants to (i) communicate directly with Health Care Providers concerning the Defective Nichols Kits, (ii) arrange for or promote Health Care advocates for Defective Nichols Kits, (iii) arrange for or promote educational sessions and other programs concerning Defective Nichols Kits that were attended by Health Care Providers, (iv) arrange for, organize, or promote clinical studies of Defective Nichols Kits; and for each Distributor and/or third party describe and identify all documents setting forth the full scope of the duties and obligations under its agreement with Defendants to provide these services.

**INTERROGATORY NO. 17:**

12

Identify each agreement and/or contract with any person and/or entity for the co-promotion of the Defective Nichols Kits during the Relevant Time Period and identify all documents setting forth the full scope of the duties and obligations under its agreement with Defendants to provide these services.

**INTERROGATORY NO. 18:**

Please identify all Vendors including but not limited to physicians, endocrinologists, and/or diagnostic laboratory specialists which were retained by or which received payments, directly or indirectly, from Defendants between during the Relevant Time Period to prepare, write, draft, edit, perform or manage technical writing services in connection with a journal article, abstract, case report, or letter to the editor, published during the Relevant Time Period, which discusses the use of the Defective Nichols Kits for approved diagnostic testing, monitoring and/or treatment, setting forth the title, author(s) and citation of each journal article, abstract, case report, or letter to the editor, the amount of any Payments received by the Vendor in connection therewith, and the amount of any Payments received by the author(s).

**INTERROGATORY NO. 19:**

Please identify all taskforces, units, and other groups within Defendants organization that had as one of their purposes to promote or assist in the promotion of Defective Nichols Kits, and for each such taskforce, unit or group, describe fully its mission and goals, and state when it for formed and identify the persons who were the leaders and members.

**INTERROGATORY NO. 20:**

Please identify all governmental investigations initiated by any governmental entity, including, the United States Senate, the United States House of Representatives, the United States Food and Drug Administration ("FDA"), U.S. Department of Health & Human Services

Office of Inspector General, the United States Department of Justice including specifically but without limitation the U.S. Attorney's Office for the Eastern District of New York, and any state Attorney General, that relate to the development, manufacture, testing, marketing, sales or distribution of Defective Nichols Kits.

**INTERROGATORY NO. 21:**

Please identify all of Your present and/or former employees, representatives, and/or other Persons acting on Your behalf who have participated in the gathering of any data and information in response to any government subpoenas relating to the development, manufacture, testing, marketing, sales or promotion of Defective Nichols Kits.

**INTERROGATORY NO. 22:**

Please identify all of Your present and/or former officers, agents, attorneys, employees, representatives, or others acting on Your behalf who were responsible for negotiating, structuring and/or closing the Purchase and/or Acquisition of Defendant Nichols Institute Diagnostic, Inc, setting forth the full name and title of said officer, agent, attorney, employee, executive, or representative, his or her residential and business addresses, and the department he or she worked in.

**INTERROGATORY NO. 23:**

Please identify each database that records, maintains or stores data and/or any information relating to the Purchase and/or Acquisition of Nichols Institute Diagnostic, Inc, including without limitation, information concerning all agreements, contracts and/or other legal documents, setting forth the name of the database, the fields of data stored in the database, and the manner in which an electronic copy can be obtained.

14

**INTERROGATORY NO. 24:**

Please identify each agreement and/or contract concerning the Purchase and/or Acquisition of Nichols Institute Diagnostic, Inc, including without limitation, all agreements, contracts and/or other legal documents, setting forth the terms, structure, contractual rights, obligations, duties, liabilities and/or responsibilities of the acquiring entity and Nichols as well as any and all successors and assignees.

Date:     February 10, 2011
         New York, New York

By:

**HACH & ROSE, LLP**

Gregory Hach, Esq.
Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 779-0057
Fax: (212) 779-0028

James R. Dugan, II, Esq.
Douglas R. Plymale, Esq.
David B. Franco, Esq.
DUGAN LAW FIRM
One Canal Place
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
Fax: (504) 648-0181

Michael A. London, Esq.
Virginia E. Anello, Esq.
Matthew S. Schoen, Esq.
DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, New York 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501

Eric L. Young, Esq.
Gerald Egan, Esq.
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
Telephone: (215) 367-5151
Fax: (215) 367-5143

Samuel Issacharoff, Esq.
40 Washington Square South
New York, New York 10012
Telephone: (212) 998-6580

*Class Counsel for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Interrogatories to Defendants Quest Diagnostics Inc. and Nichols Diagnostics Institute Inc. have been served on Defendants by hand delivery, by first class mail, by fax, or by electronic transmission upon all counsel of record, this 10th day of February, 2011.

_____
Frank R. Schirripa

17