## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 456 HEALTH AND WELFARE TRUST FUND and UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | No. 10-cv-01692-RJD-RLM |
| v. | ) ) | |
| QUEST DIAGNOSTICS INCORPORATED and NICHOLS INSTITUTE DIAGNOSTICS, | ) ) ) | |
| **Defendants.** | ) ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE</u>

Respectfully submitted,

_____

Michael S. Gardener
Seth R. Goldman (SG-2452)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000
SRGoldman@mintz.com

**TABLE OF CONTENTS**

Page

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... iii

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 1

I.  The Complaint, Which Has Already Been Amended Once, Still Fails to State Any Claim Upon Which Relief May Be Granted Against Defendant Quest Diagnostics .................................................................................................... 1

II.  The First Cause of Action Fails To State a Claim for Violation of RICO § 1962(C) ........................................................................................................... 5

    A.  Plaintiffs Have Failed To Plead an "Enterprise" Distinct From the Defendant "Persons" as Required by § 1962(c). ........................................... 5

    B.  The First Cause of Action Must Also Be Dismissed for Failure to Plead Any Predicate Acts With Requisite Particularity. ................................ 9

III.  The Second Cause of Action Fails to State a Claim for Violation of RICO § 1962(D) ......................................................................................................... 11

IV.  Plaintiffs' Claims Are Barred By the Applicable Statutes of Limitation ....................... 12

    A.  Plaintiffs' Purported RICO Claims Are Time-Barred. ................................... 14

    B.  Plaintiffs' State Law Claims Are Also Time-Barred. ..................................... 18

        1.  Third Cause of Action — Violation of New York General Business Law §§ 349 and 350. ............................................................... 18

        2.  Fourth, Fifth and Sixth Causes of Action — Common Law Fraud. ............................................................................................... 19

        3.  Seventh and Eighth Causes of Action — Breach of Warranty. ................. 19

        4.  Ninth Cause of Action — Unjust Enrichment ............................................ 20

V.  Plaintiffs' State Law and Common Law Claims Fail to State a Valid Claim For Relief ............................................................................................................ 21

Page

A.    Third Cause of Action — New York Gen. Bus. Law § 349. ...............................21

B.    Fourth, Fifth and Sixth Causes of Action — Fraud and Misrepresentation Claims...................................................................................22

C.    Seventh and Eighth Causes of Action — Breach of Warranty. ...........................23

D.    Ninth Cause of Action — Unjust Enrichment.......................................................23

Conclusion ....................................................................................................................24

# TABLE OF AUTHORITIES

Page

## Cases

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351 (2d Cir. 1997) ..................................... 20

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) ............................. 14

*Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL
    3833440 (S.D.N.Y. Dec. 29, 2006) ................................................................................... 17

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999) ......................................... 9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................................... 2, 3

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146
    (2d Cir. 1995) .................................................................................................................. 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 2

*Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565 (S.D.N.Y. 1999) .................. 6, 7

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200
    (2004) .............................................................................................................................. 21

*Bologna v. Allstate Insurance Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001) ................................. 11

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ..................................................... 12

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) ................................................ 23

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003) ................................................ 4

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) .................................................. 8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................................... 12

*City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526 (S.D.N.Y. 2005) .............................. 6, 8

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008) .............................. 23

*Cohain v. Klimley*, No. 08 Civ. 5047, 2010 WL 3701362 (S.D.N.Y. Sept. 20,
    2010) ............................................................................................................................... 15

*Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193 (E.D.N.Y.
    2006) ............................................................................................................................. 5, 8

Page

*Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166 (E.D.N.Y. 2007) ................................. 20

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ........................................ 22

*DeFazio v. Wallis*, 500 F. Supp. 2d 197 (E.D.N.Y. 2007) ........................................................... 8, 9

*Dent v. U.S. Tennis Ass'n*, No. CV-08-1533, 2008 WL 2483288 (E.D.N.Y. June 17, 2008) ....................................................................................................................................... 3

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) ............................................... 21, 23

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996) ................................................ 7, 8, 11

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ........................... 10

*Ely-Cruickshank Co. v. Bank of Montreal*, 81 N.Y.2d 399 (1993) .............................................. 21

*Feinberg v. Katz*, No. 99 Civ 0045, 2005 WL 2990633 (S.D.N.Y. Nov. 7, 2005) ....................... 8

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ..................................................................... 2

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ................................................................................ 3

*Fromer v. Yogel*, 50 F. Supp. 2d 227 (S.D.N.Y. 1999) ............................................................... 19

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001) ......................................... 18, 22

*Galletta v. Stryker Corp.*, 283 F. Supp. 2d 914, 916 (S.D.N.Y. 2003) ........................................ 19

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439 (E.D.N.Y. 2007) ................................................................................................................................... 18, 20

*Gunther v. Capital One, N.A.*, No. 09-cv-2966, 2010 WL 1404122 (E.D.N.Y. April 8, 2010) ................................................................................................................... 22

*Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407 (1985) ......................................................... 19

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010) ................................................... 23

*In re Bayer Corp.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) ........................................................... 24

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ................................... 11

Page

*In re Integrated Res. Inc. Real Estate Limited P'ships Sec. Litig.*, 850 F. Supp. 1105 (S.D.N.Y. 1993) ............................................................................................ 15, 16

*In re Integrated Res., Inc., Real Estate Limited P'ships Sec. Litig.*, 851 F. Supp. 556 (S.D.N.Y. 1994) ............................................................................................ 14

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76 (S.D.N.Y. 2003) ................................................................................................. 4

*In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2d Cir. 1998) ........................... 14, 15, 16, 17

*In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007) ............................. 8

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ................... 21, 23

*In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198 (3d Cir. 2002). .............................................................................................................. 10, 11

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ................................................. 16

*J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144 (2007) ..................................... 22

*Katzman v. Victoria's Secret*, 167 F.R.D. 649 (S.D.N.Y. 1996) ................................ 5

*Kotlyarsky v. N.Y. Post*, 757 N.Y.S.2d 703 (N.Y. Sup. Ct. 2003) ............................ 18, 19

*Leung v. Law*, 387 F. Supp. 2d 105 (E.D.N.Y. 2005) ................................................ 5

*Long Island Lighting Co. v. Imo Indus., Ind.*, 6 F.3d 876 (2d Cir. 1993) ................. 15, 16

*Lorentzen v. Curtis*, 18 F. Supp. 2d 322 (S.D.N.Y. 1998) ........................................ 8

*Mathon v. Feldstein*, 303 F. Supp. 2d 317 (E.D.N.Y. 2004) ..................................... 9

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341 (S.D.N.Y. 2004) ............................................................................................... 14, 15

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) .................................... 9

*Pahuta v. Massey-Ferguson, Inc.*, 942 F. Supp. 161 (W.D.N.Y. 1996) ..................... 20

*Pocino v. Culkin*, No. 09-cv-3447, 2010 WL 3516219 (E.D.N.Y. Aug. 31, 2010) ......................... 2

v

Page

*Protter v. Nathan's Famous Sys., Inc.*, 925 F. Supp. 947 (E.D.N.Y. 1996) ................................... 7

*Rafter v. Liddle*, 704 F. Supp. 2d 370 (S.D.N.Y. 2010)............................................................. 17

*Republic of Columbia v. Diageo N. Am., Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007) ........................................................................................................................................ 5

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339 (2d Cir. 1994) .................................................................................................................. 6, 7, 8

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)................................................................... 12

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009).................................... 3

*Rush v. Oppenheimer & Co.*, 628 F. Supp. 1188 (S.D.N.Y. 1985); ................................. 6, 7

*Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996)................................ 15

*Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F. Supp. 2d 630 (S.D.N.Y. 1998) ............................................................................................................................................. 18

*Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006) ....................................................... 14

*Spencer Trask Software and Information Services LLC v. RPost International, Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003) ........................................................................ 23

*Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (2007) .................................................................. 24

*Spoto v. Herkimer County Trust*, No. 99 Civ. 1476, 2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ................................................................................................................................. 5

*Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406 (2d Cir. 2008) ................................... 15

*Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579 (E.D.N.Y. 1994) ................................................. 2

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23 (2d Cir. 2002).......................................... 14

*Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443 (S.D.N.Y. 2005)........................................ 16

*Tuscano v. Tuscano*, 403 F. Supp. 2d 214 (E.D.N.Y. 2005) ........................................................ 5

*TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005) ................................ 22

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................................... 1

                                                                                            **Page**

*Vaughn v. Air Line Pilots Assoc., Int'l*, 604 F.3d 703 (2d Cir. 2010) .............................................. 2

*Vitolo v. Mentor H/S Inc.*, 426 F. Supp. 2d 28 (E.D.N.Y. 2006) ................................................ 22

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...................................... 24

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ.
    8606, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ..................................................... 5, 12, 24

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) ........................................................ 9

*Zdziebloski v. Town of East Greenbush*, 101 F. Supp. 2d 70 (N.D.N.Y. 2000) ........................... 12

**Statutes**

18 U.S.C. § 1962(c) ...................................................................................................... passim

18 U.S.C. § 1962(d) ........................................................................................................... 11

N.Y. GEN. BUS. LAW § 349 .............................................................................................. 18, 21

N.Y. GEN. BUS. LAW § 350 .................................................................................................... 18

N.Y. U.C.C. LAW § 2-725 ................................................................................................ 19, 20

New York C.P.L.R. § 213 ................................................................................................ 19, 20

New York C.P.L.R. § 214 ...................................................................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Fed. R. Civ. P. 9(b) ........................................................................................................ passim

## INTRODUCTION

The named Plaintiffs, two union health and welfare funds, allege that defendant Nichols Institute Diagnostics ("NID") manufactured and sold certain defective diagnostic laboratory test kits to clinical laboratories. (Am. Compl. ¶ 28). Plaintiffs — who never purchased any of the kits themselves nor reimbursed any laboratories for their kit purchases — purport to bring this lawsuit as a class action on behalf of all entities in the United States who, for purposes other than resale, purchased, reimbursed and/or paid for the allegedly defective kits. (Am. Compl. ¶¶ 6, 63–65).

Defendants NID and Quest Diagnostics Incorporated ("Quest Diagnostics") respectfully submit this memorandum in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Quest Diagnostics must be dismissed from this action as Plaintiffs have utterly failed to plead any facts whatsoever establishing any plausible claim for relief against that defendant. Plaintiffs' purported RICO claims fail to satisfy the rigorous pleading requirements of that statute. Further, both the RICO claims as well as the state law and common law claims are time-barred. In addition, the complaint, even after amendment, fails to set forth any viable claims for relief under Plaintiffs' various state law and common law theories.

## ARGUMENT

**I.    THE COMPLAINT, WHICH HAS ALREADY BEEN AMENDED ONCE, STILL FAILS TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST DEFENDANT QUEST DIAGNOSTICS**

NID is sued separately as a "wholly owned subsidiary" of Quest Diagnostics, and thus the two defendants are legally separate corporate entities. (Am. Compl. ¶¶ 19, 23). It is black letter law that the existence of a parent-subsidiary relationship between two corporations will not, without more, make the parent liable for the acts of its subsidiary. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998); *Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 587–

1

88 (E.D.N.Y. 1994).  There are no allegations of corporate veil piercing.  *See, e.g., Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) (setting forth the factors that must be alleged and proved to pierce the corporate veil, none of which are even alleged in Plaintiffs' pleading, much less supported by factual averment).  Accordingly, in order to state a claim for relief against Quest Diagnostics, Plaintiffs must allege facts sufficient to satisfy the standards established in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Here, however, even after amendment, Plaintiffs have failed to allege a single fact indicating that Quest Diagnostics, as opposed to NID, had any role whatsoever in the manufacture or sale of any allegedly defective kits.  The only fact alleged regarding Quest Diagnostics appears in paragraph 46, where it is asserted that in 2001 "in conjunction with Quest," NID published an abstract (which is not alleged to be inaccurate or misleading in any way) in the publication of the Endocrine Society.  Beyond that meaningless allegation, the amended complaint is barren of a single factual averment regarding any wrongful acts by Quest Diagnostics.

The Supreme Court has made clear that in deciding a motion to dismiss, "'naked assertion[s]' devoid of 'further factual enhancement'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Further, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *accord Vaughn v. Air Line Pilots Assoc., Int'l*, 604 F.3d 703, 709 (2d Cir. 2010); *Pocino v. Culkin*, No. 09-cv-3447, 2010 WL 3516219, at *1 (E.D.N.Y. Aug. 31, 2010)

2

(Dearie, C.J.).  To avoid dismissal, the pleading must allege facts that, when assumed as true,

evince "more than a sheer possibility that a defendant has acted unlawfully" and affirmatively

demonstrate that Plaintiffs are entitled to relief.  *See Iqbal*, 129 S. Ct. at 1949.  Here, after two

attempts, Plaintiffs are unable to allege any acts whatsoever demonstrating any right to relief

against Quest Diagnostics.

In their pre-motion letter Plaintiffs asserted that because the amended complaint

references a *qui tam* action filed against Quest Diagnostics as well as NID and refers to a civil

settlement by Quest Diagnostics in that matter (Am. Compl. ¶¶ 57–62), this somehow rescues

the present action.  That is plainly not the law.  It is undisputed that Quest Diagnostics made no

admission in the settlement, a fact conceded by Plaintiffs' counsel at the pre-motion hearing

held on December 9, 2010.  Most significantly, it is well-settled in this circuit that "[p]aragraphs

in a complaint which are 'based on, or rely on, complaints in other actions that have been

dismissed, settled, or otherwise not resolved are, as a matter of law, immaterial'" and should be

stricken.  *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL

3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (quoting *RSM Prod. Corp. v. Fridman*, 643 F. Supp.

2d 382, 403 (S.D.N.Y. 2009)); *see also RSM Production*, 643 F. Supp. 2d at 403 (S.D.N.Y.

2009) (granting motion to dismiss, finding that such matters "could have no possible bearing on

the dispute before the court"); *Dent v. U.S. Tennis Ass'n*, No. CV-08-1533, 2008 WL 2483288,

at *4 (E.D.N.Y. June 17, 2008) (Pohorelsky, M.J. sitting for Dearie, C.J.) (striking references in

complaint to settlement agreements between defendant and the New York Attorney General's

office); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78–79

(S.D.N.Y. 2003).[1]  Accordingly, because the settlement of the *qui tam* action is not even to be considered, Plaintiffs have presented no basis for proceeding against Quest Diagnostics.

Plaintiffs' final argument in their pre-motion letter is that Quest Diagnostics has "successor liability" for NID.  However, there is not a single factual allegation in the complaint, even as amended, to support such an assertion, and no claim of successor liability appears anywhere in the pleading.  To the contrary, NID is sued as a separate defendant.  (Am. Compl. ¶ 23).  As a matter of law, successor liability can only arise when a company purchases the *assets* of another company and where at least one of the following four factors apply: (i) the buyer has expressly assumed liability; (ii) the purchase resulted in a *de facto* merger or consolidation; (iii) the purchase resulted in a mere continuation of the predecessor under a different name; or (iv) fraud.  *See, e.g., Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003).  Here, where Quest Diagnostics is not alleged to, and did not, purchase the assets of NID, and NID is instead a wholly-owned subsidiary, Quest Diagnostics cannot be held liable under a successor liability theory under any circumstances.  *See, e.g., id.* (in an acquisition of stock transaction, liability of acquiring company can only be established by piercing corporate veil).  Further, Plaintiffs have failed to allege any facts demonstrating the existence of any of the four factors necessary to prove successor liability.  Accordingly, Plaintiffs' argument is wholly without merit.

In sum, because Plaintiffs have failed, even after amendment, to allege any facts whatsoever establishing any basis for relief against Quest Diagnostics, that defendant must be dismissed from this case.

---

[1]      Defendants have incorporated a motion to strike these offending paragraphs into their motion to dismiss.

## II.  THE FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM FOR VIOLATION OF RICO § 1962(c)

"It has been suggested that 'the civil provisions of [RICO] are the most misused statutes in the federal corpus of law.'" *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004) (quoting *Spoto v. Herkimer County Trust*, No. 99 Civ. 1476, 2000 WL 533293, at *1 (N.D.N.Y. Apr. 27, 2000)). This District has aptly underscored the close scrutiny with which Plaintiffs' First Cause of Action — the only federal statute pleaded — should be evaluated: "RICO claims 'must be reviewed with appreciation of the extreme sanctions it provides so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.'" *Republic of Columbia v. Diageo N. Am., Inc.*, 531 F. Supp. 2d 365, 382–83 (E.D.N.Y. 2007) (quoting *Leung v. Law*, 387 F. Supp. 2d 105, 112–13 (E.D.N.Y. 2005)); *see also Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 226 (E.D.N.Y. 2005) ("Because '[c]ivil RICO is an unusually potent weapon[,] "courts should strive to flush out frivolous RICO allegations at an early stage in the litigation."'") (quoting *Katzman v. Victoria's Secret*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)).  Because even after amending their RICO theory Plaintiffs have failed either (i) to allege a RICO "enterprise" that is distinct from the defendants' regular business operations as required by 18 U.S.C. § 1962(c), or (ii) to identify the sources or substance of any particularized predicate acts of racketeering as required by Fed. R. Civ. P. 9(b), the First Cause of Action must be dismissed.

### A.  Plaintiffs Have Failed To Plead An "Enterprise" Distinct From The Defendant "Persons" As Required By § 1962(c).

RICO "'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 202 (E.D.N.Y. 2006) (citation omitted).

Accordingly, § 1962(c) of RICO draws a crucial distinction between the requisite RICO "enterprise" and the defendant RICO "person" who infiltrates that enterprise and uses it to engage in racketeering activities.[2/] This Circuit has squarely and repeatedly held that the enterprise cannot be the same entity as the defendant RICO person. *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994). While a corporation and its subsidiaries may be an enterprise for RICO purposes, the infiltrating defendant RICO person committing the illegal racketeering acts must be an entity distinct from the enterprise. Conversely, a corporate entity may be held liable as a defendant RICO person but only "where it associates with others to form an enterprise that is sufficiently distinct from itself." *Id.*; *see also Rush v. Oppenheimer & Co.*, 628 F. Supp. 1188, 1193 (S.D.N.Y. 1985); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 580 (S.D.N.Y. 1999) ("The enterprise . . . must . . . be an entity separate from the pattern of racketeering activity in which it engages . . . . [A] corporate entity may not be both the enterprise and the person who conducts the affairs of the enterprise through racketeering."). Where all the entities that make up the enterprise are also all the defendant RICO persons — precisely the case here — the distinctiveness requirement of § 1962(c) is not satisfied. *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 547–52 (S.D.N.Y. 2005).

The Second Circuit Court of Appeals has made it clear that a parent corporation and its wholly-owned subsidiaries, even though they are legally separate entities, cannot for RICO purposes be cast as both the defendant infiltrating RICO "person" and the alleged infiltrated RICO "enterprise." This is because there is not sufficient distinction between the enterprise and the "infiltrating" person when the members of the enterprise are in fact so closely affiliated.

---

[2/] 18 U.S.C. § 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity...."

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063–64 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998); *see also Riverwoods Chappaqua Corp*, 30 F.3d at 344 (a RICO plaintiff cannot allege a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendants); *Rush*, 628 F. Supp. at 1194 (dismissing § 1962(c) claim which had cast corporation as "person" and its New York City office as "enterprise," holding that "carving out a 'piece' of a corporate defendant to create a distinct 'enterprise' will not satisfy the pleading of a civil RICO claim'"); *Protter v. Nathan's Famous Sys., Inc.*, 925 F. Supp. 947, 955–56 (E.D.N.Y. 1996) (dismissing § 1962(c) claim because corporation cast as "enterprise" is not distinct from corporate officers alleged as "persons").

Plaintiffs have effectively acknowledged that they are wholly unable to meet this distinctiveness requirement. In their initial complaint Plaintiffs alleged that the enterprise consisted solely of defendant RICO persons Quest Diagnostics and its wholly-owned subsidiary NID (Compl. ¶ 75). Recognizing the inadequacy of this pleading in light of the Second Circuit's holding in *Discon*, Plaintiffs amended their complaint to now allege that the enterprise included not only Quest Diagnostics and NID, the named RICO person defendants, but also "other as yet unknown marketing and distribution agents." (Am. Compl. ¶ 75). This attempted rescue effort is wholly unavailing for two reasons. First, its rank generality fails to satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *See infra* at Part II. B; *see also Black Radio Network, Inc.*, 44 F. Supp. 2d at 581 & n.6 (rejecting attempt to add "certain unnamed long-distance carriers" and holding that "[p]laintiffs are not entitled … to conduct discovery to discover facts that would establish a RICO enterprise.").

Second, this cursory addition of corporate "agents" — none of whom are alleged to have done anything more than assist their principals to sell the kits — fails to satisfy the RICO distinctiveness requirement. Second Circuit law expressly holds that agents acting on behalf of their principals' business remain substantially identical to their principals for RICO purposes, and thus do not constitute the distinction between RICO enterprise and defendant RICO person required by § 1962(c). *See Discon*, 93 F.3d at 1064 ("Discon's reference to unnamed 'attorneys, accountants and other agents' as part of the enterprise does not alter this analysis."); *Riverwoods*, 30 F.3d at 344 (RICO enterprise cannot consist merely of the corporate defendants and its agents carrying on the regular affairs of the defendants); *see also In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346–47 (S.D.N.Y. 2007) ("[T]he Bank's inclusion of 'affiliates and subsidiaries located around the world,' 'culpable employees, directors and officers,' and Parmalat's counsel Zini do not distinguish the enterprise from the person. Nor does the reference to the 'variety of third-party entities' change anything."); *Lorentzen v. Curtis*, 18 F. Supp. 2d 322, 332 (S.D.N.Y. 1998) (dismissing § 1962(c) claim because defendant companies were not distinct from alleged enterprise made up of the companies and their law firms as "participating agents" in the alleged fraud).[3/]

---

[3/]    Plaintiffs' citation in their pre-motion letter to *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), is unavailing. In a decision narrowly limited to its particular facts, the Court ruled that where the defendant boxing promoter was both the only shareholder and employee of his corporation and conducted the affairs of that sole proprietorship in a RICO-prohibited way, a § 1962(c) violation may be found. The Court went out of its way to specifically note that the Second Circuit precedent in cases such as *Discon* and *Riverwoods* concerned very different circumstances which were in no way being considered by the Court. *Id.* at 164. Subsequent to *King,* the courts in this circuit continue to follow *Discon* as controlling authority and dismiss § 1962(c) claims where, as here, the alleged enterprise consists of a parent and its subsidiary corporations or a corporation and its affiliates or agents engaged in their regular business activities. *See, e.g., Cyco.net,* 383 F. Supp. 2d at 547–52; *Crab House of Douglaston,* 418 F. Supp. 2d at 205–06; *In re Parmalat Sec. Litig,* 479 F. Supp. 2d at 346–47; *DeFazio v. Wallis,* 500 F. Supp. 2d 197, 209–10 (E.D.N.Y. 2007); *Feinberg v. Katz,*No . 99 Civ 0045, 2005 WL 2990633, at *7–8 (S.D.N.Y. Nov. 7, 2005).

Accordingly, because after two attempts Plaintiffs have been wholly unable to allege a RICO enterprise that is distinct from the defendant RICO persons, the First Cause of Action must be dismissed for failing to state a claim for relief under § 1962(c).

**B.     The First Cause of Action Must Also Be Dismissed For Failure To Plead Any Predicate Acts With Requisite Particularity.**

In this circuit, where — as here — the alleged predicate acts supporting the RICO claim are based on mail or wire fraud, such acts must be pleaded with particularity under Fed. R. Civ. P. 9(b):

> When         the predicate acts of a civil RICO claim are grounded in fraud, the concerns associated with pleading fraud with particularity take on even greater importance.  Accordingly, a claim of mail or wire fraud must specify the content, date and place of any alleged misrepresentation and the identity of the persons making them.

*Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322–23 (E.D.N.Y. 2004) (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir. 1990)) (internal citation omitted); *see also Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999); *DeFazio*, 500 F. Supp. 2d at 204.  In their undifferentiated references to "Defendants' use of the mails and wires," or "Defendants' scheme," or "Defendants' course of fraudulent conduct," Plaintiffs have failed to meet *every* prong of the particularity standard itemized in *Mathon*. (*See, e.g.*, Am. Compl. ¶¶ 81, 83, 60).  Nowhere in their purported inventory of "thousands" of predicate acts of fraud do Plaintiffs specify even *one* source, date or place, or quote from — or even summarize the substance of — any particular communication that allegedly constituted mail or wire fraud.  *Id.* ¶ 81.  Instead, Plaintiffs' entire portrayal of the alleged RICO scheme "vaguely attributes the alleged fraudulent statement to 'defendants,'" a tactic long ago rejected in this circuit and others. *See, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

9

The failure to satisfy Rule 9(b)'s requirements is even more glaring with regard to Quest Diagnostics. Where there are multiple defendants, Rule 9(b) requires that the complaint inform *each* defendant of the nature of its participation in the alleged fraud. *See, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Plaintiffs' complaint, even after amendment, plainly fails to do so. Quest Diagnostics never is identified as a source or facilitator of any fraudulent communications or acts. Instead, Plaintiffs refer to (unspecified) "communications with and among enterprise participants," but *only* regarding "the defective Nichols Kits" (Am. Compl. ¶ 81 (a), (b), (f) & (g)), and then admit that *all* of those kits were "developed," "launched," "manufactured, marketed and sold" *only* by NID. *Id.* ¶¶ 37, 41, 52 & 64(a). Never is Quest Diagnostics identified as a participant in those kit-selling efforts. Similarly, Plaintiffs' generalized allegation of wrongful "communications with patients and Class Members" again is limited to misrepresentation about the "defective Nichols Kits," *id.* ¶ 81(c), and again is amplified only by allegations grouped under the telling headings, *"Nichols' Fraudulent Marketing of PTH [and Other Advantage Diagnostic] Kits. Id.* ¶¶ 47–56 (emphasis added). Indeed, Quest Diagnostics is not provided with any notice whatsoever as to what fraudulent conduct it is charged with. Accordingly, Plaintiffs' amended complaint fails utterly to meet the requirements of Rule 9(b).

Plaintiffs' sole effort at rebuttal in their pre-motion letter was to assert that Defendants are seeking to hold them to a pleading standard of "absolute precision," and to refer to a case outside of this circuit, *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002). In fact, Defendants do not seek to hold Plaintiffs to any standard beyond that stated in Rule 9(b) and the decisions of this Circuit, which metric Plaintiffs have wholly failed to satisfy. Further, in the very authority Plaintiffs do cite, the Third Circuit

expressly held that in pleading fraud, Rule 9(b) requires that the claim must be supported "with all of the essential factual background that would accompany 'the first paragraph of any newspaper story — that is, the 'who, what, when, where and how' of the events at issue.'" *Id.* at 217 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).  It is precisely such facts that Plaintiffs have failed to set forth.

Because Plaintiffs have "simply regurgitated the generic requirements of the RICO statute and the mail and wire fraud statutes" without setting forth any specifics regarding any alleged fraudulent communications, they have failed to satisfy the strictures of Fed. R. Civ. P. 9(b).  *Bologna v. Allstate Insurance Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001).  Accordingly, for this reason as well their attempt to state a claim under RICO § 1962(c) must be dismissed.

## III.   THE SECOND CAUSE OF ACTION FAILS TO STATE A CLAIM FOR VIOLATION OF RICO § 1962(d)

By their Second Cause of Action, Plaintiffs plead no new or additional facts.  Instead, they simply proffer an ostensibly separate claim that "Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c)." (Am. Compl. ¶ 93).  That count, however, impermissibly substitutes empty redundancy for new substance, conceding that the alleged conspiracy's only object was "to conduct or participate in, directly or indirectly, the conduct of affairs of the Defective Kits Enterprise," and that the "overt and predicate fraudulent racketeering acts in furtherance of the conspiracy" are only those "as described above." *Id.* ¶¶ 93, 94 (apparently referring back to ¶ 81 of the First Cause of Action).  Because this count adds nothing beyond a bare-bones allegation of conspiracy to violate § 1962(c), and because as shown above there is no well-pleaded claim for violation of that statute, Plaintiffs' claim under § 1962(d) must be dismissed as well. *See, e.g., Discon*, 93 F.3d at 1064 ("Since we have held

11

that the prior claims do not state a cause of action for substantive violations of RICO, the present

claim does not set forth a conspiracy to commit such violations."); *West 79th Street Corp.*, 2004

WL 2187069, at *16.

## IV.    PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION

This action was commenced on April 15, 2010.  Plaintiffs admit that all of the kits

claimed to be defective were in fact recalled by NID in 2005.  (Am. Compl. ¶ 59).  The recall

notices sent to the members of the purported plaintiff class in 2005, copies of which are attached

as Exhibit 1 to the Appendix,[4/] expressly advised the laboratories that the kits did not perform as

represented in the accompanying NID Directional Inserts, did not correlate to the industry-

standard IRMA kits as NID had promised, and had problems with accuracy and reliability, which

are precisely the defects and misrepresentations complained of by Plaintiffs.  *See id.* ¶¶ 47–49,

50, 53–54).  The notices advised that the FDA was similarly aware of the recall actions.

Following the recalls, on June 16, 2005, NID notified the purported class members that it

was placing a hold on *all* of its products, which hold was also reported in the 2005 Form 10-K

filed with the SEC on February 28, 2006. (*See* Exhibit 2 to the Appendix containing pertinent

portions of the 10-K).  The FDA itself in 2005 issued public Enforcement Bulletins on its website

(http://www.fda.gov/Safety/Recalls/EnforcementReports/2005) regarding the recalls and the

reasons therefor, copies of which are attached as Exhibit 3 to the Appendix.  These bulletins

advised that the kits were being recalled because, *inter alia*, "[p]erformance does not meet claims

---

[4/]     In deciding a motion to dismiss, the Court may consider the factual allegations in the pleadings, exhibits to
the complaint or documents or statements incorporated by reference, matters of which judicial notice may be taken,
public disclosure documents required by law to be filed, news articles, and documents in Plaintiffs' possession or of
which they had knowledge and relied on in bringing suit. *See Brass v. Am. Film Techs., Inc.*,9 87 F.2d 142, 150 (2d
Cir. 1993); *see also Rothman v. Gregor*,2 20 F.3d 81, 88–89 (2d Cir. 2000); *Chambers v. Time Warner, Inc.*, 282
F.3d 147, 153 (2d Cir. 2002); *Zdziebloski v. Town of East Greenbush*, 101 F. Supp. 2d 70, 71 (N.D.N.Y. 2000).

in the Directional Insert concerning correlation with the IRMA ACTH assay." (*Compare* Am.

Compl. ¶¶ 47–49).

In its public SEC filings for 2004 and 2005, also available on the Internet, Quest

Diagnostics publicly disclosed that the United States Attorney's Office had commenced a

criminal investigation into the manufacture and marketing of the test kits. (Pertinent portions of

these filings are attached as Exhibit 4 to the Appendix). Thus, the Form 10-Q filed on October

29, 2004, disclosed:

> On October 25, 2004, the Company and its test kit manufacturing subsidiary, Nichols Institute Diagnostics, each received a subpoena from the United States Attorney's office for the Eastern District of New York. The subpoenas seek the production of various business records, including documents related to tests cleared by the Food and Drug Administration for parathyroid hormone, or PTH levels.
>
> * * *
>
> [T]he Company understands that there may be pending qui tam claims brought by former employees or other "whistle blowers", or other pending claims as to which the Company has not been provided with a copy of the complaint and accordingly cannot determine the extent of any potential liability.

The Form 10-K for 2004, filed on March 10, 2005, reported:

> We have also received subpoenas from the United States Attorney's Office for the Eastern District of New York requiring the production of various business records including documents related to parathyroid hormone testing and parathyroid hormone test kits manufactured by our subsidiary Nichols Institute Diagnostics.

The Form 10-K for 2005, filed on February 28, 2006, provided further detail:

> During the fourth quarter of 2004, Quest Diagnostics Incorporated and Nichols Diagnostic Institute (NID), our test kit manufacturing subsidiary, each received a subpoena from the United States Attorney's Office for the Eastern District of New York. Quest Diagnostics and NID have been cooperating with the United States Attorney's Office. In connection with such cooperation, we have been providing information and producing various business

> records of NID and Quest Diagnostics, including documents re-
> lated to testing and test kits manufactured by NID.   This
> investigation by the United States Attorney's Office could lead to
> civil and criminal damages, fines, and penalties and additional
> liabilities from third party claims.

The media also reported on the criminal investigation into the manufacture of the kits.  Attached

as Exhibit 5 to the Appendix are articles published by Reuters News service and by the Newark

Star-Ledger on October 28 and 29, 2004, respectively, which were available on the Internet.

Both media sites reported on the commencement of the criminal investigation into the test kits

made by NID and the fact that the companies were reporting having been served with subpoenas

by the United States Attorney's Office.

**A.      Plaintiffs' Purported RICO Claims Are Time-Barred.**

Civil RICO claims are subject to a four-year statute of limitations.  *Agency Holding Corp.*

*v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  A RICO claim accrues when the

plaintiff discovers, or should have discovered, the RICO injury.  *Tho Dinh Tran v. Alphonse*

*Hotel Corp.*, 281 F.3d 23, 35 (2d Cir. 2002), *overruled on other grounds by Slayton v. Am.*

*Express Co.*, 460 F.3d 215 (2d Cir. 2006).  The statute of limitations begins to run "when

[Plaintiffs] have actual or inquiry notice of the injury."  *In re Merrill Lynch Ltd. P'ships Litig.*,

154 F.3d 56, 60 (2d Cir. 1998).  "The limitations period for a fraud-based RICO action

commences when Plaintiffs are placed on notice of facts which should arouse suspicion."  *In re*

*Integrated Res., Inc., Real Estate Limited P'ships Sec. Litig.*, 851 F. Supp. 556, 567 (S.D.N.Y.

1994).  The claim accrues not when plaintiff has all of the facts regarding the fraud, but rather

"facts sufficient to create a duty to investigate further into the matter."  *Id.* at 568.  The question

is whether a reasonable person in plaintiff's shoes would have inquired further into the matter.

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341, 362–63 (S.D.N.Y.

2004).  The issue involves an examination of when Plaintiffs received information sufficient to

alert a reasonable person to the probability that they had been misled and whether they responded to such notice with reasonable diligence. *Id.*

The question of inquiry notice need not be left to a finder of fact. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 60; *Cohain v. Klimley*, No. 08 Civ. 5047, 2010 WL 3701362, at *5 (S.D.N.Y. Sept. 20, 2010) ("'Whether a plaintiff was placed on inquiry notice is analyzed under an objective standard. This objective determination can be resolved as a matter of law — it need not be made by a trier of fact.'" (quoting *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 427 (2d Cir. 2008))). The test for constructive knowledge is objective and "dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves." *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996). "The Plaintiffs need not be able to learn the precise details of the fraud, but they must be capable of perceiving the general fraudulent scheme based on the information available to them…. The statute is not tolled for a plaintiff's leisurely discovery of the full details of the alleged scheme. Instead, the period runs from the time at which a plaintiff should have discovered the general fraudulent scheme." *Id.* at 1408–09; *see also In re Integrated Res. Inc. Real Estate Limited P'ships Sec. Litig.*, 850 F. Supp. 1105, 1117–19 (S.D.N.Y. 1993). Thus, for example, the Second Circuit held that the plaintiff utility company's RICO claim accrued as of the time it knew that the defendant manufacturer had delivered defective generators to it. *Long Island Lighting Co. v. Imo Indus., Ind.*, 6 F.3d 876, 887 (2d Cir. 1993). Similarly, where the prospectuses issued to investors contained cautionary language, the Second Circuit held that the existence of such language put the Plaintiffs on inquiry notice that they had been misled by the representations and omissions made by Merrill Lynch to induce them to invest in certain limited partnerships. *In re Merrill Lynch*, 154 F.3d at 60; *see also Town of Poughkeepsie*

15

*v. Espie*, 402 F. Supp. 2d 443, 449–50 (S.D.N.Y. 2005) (RICO claim for fraudulent scheme to inflate purchase price of property accrued when the final purchase price was known to the town); *In re Integrated Res.*, 850 F. Supp. at 1119–23 (RICO claims accrued when disclosure documents put Plaintiffs on inquiry notice that prior representations were false).

In the instant case, there can be no doubt that Plaintiffs' RICO claims accrued in 2005. By that time the kits that the labs had purchased from NID had, by Plaintiffs' own admission (Am. Compl. ¶ 59), been recalled by NID.  Further, NID had sent recall notices to the members of the putative plaintiff class advising them that the representations NID had made regarding the kits were false, and that in fact the kits did not comport with the Directional Inserts as NID had stated, did not correlate to the industry-standard IRMA kits as NID had represented, and did not have the accuracy and the reliability that NID had promised.  Beyond that, the FDA issued public Enforcement Bulletins advising that the kits were defective and had been recalled.  Following the recalls, NID further notified its customers that all of its products had been put on hold.  Even more powerfully, Defendants issued repeated public filings with the SEC, all available on the Internet, disclosing that the federal government had initiated a *criminal* investigation into the manufacture and sale of the recalled kits.  In addition to Defendants' own public disclosure of these facts, the media widely reported the facts regarding the criminal investigation.  In sum, the facts establishing the existence of inquiry notice in the instant case are far stronger than the facts that caused the Second Circuit to uphold dismissal of the RICO claims in *In re Merrill Lynch* and *Long Island Lighting Co.*[5/]

---

[5/]     Plaintiffs' reliance on *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009), in its pre-motion letter is misplaced.  Not only is the decision outside of this Circuit, it is inapposite.  The court in that case held that the report of a government investigation into off-label marketing standing alone was not sufficient to trigger the statute of limitations.  Here, of course, there is much more.  As discussed, the commencement of the criminal investigation was accompanied by NID's recall of the defective kits, the sending of recall notices to the purported class members outlining the defects, public disclosure of the recalls and the defects by the FDA, and NID's total hold on all of its products.

As noted, this action was commenced on April 15, 2010. Because there is a four year statute of limitations on Plaintiffs' RICO claims, and because the limitations period on those claims undisputedly began to run in 2005, the First and Second Causes of Action must be dismissed as time-barred.

Finally, Plaintiffs have utterly failed to plead any fraudulent concealment to toll the statute of limitations. At paragraph 5 of the amended complaint, Plaintiffs assert that "the equitable tolling provisions of 28 U.S.C. § 1983 apply." No such statutory provision exists. In a civil RICO case, in order to make out a claim of fraudulent concealment, Plaintiffs would have to plead and prove three necessary elements: (i) wrongful concealment (ii) which prevented discovery of the nature of the claim within the limitations period and (iii) due diligence in pursuing discovery of the claim. *In re Merrill Lynch*, 154 F.3d at 60. Further, such allegation must be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b). *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL 3833440, at *11 (S.D.N.Y. Dec. 29, 2006). Accordingly, Plaintiffs must allege with particularity what Defendants did to conceal material information from them, and why they were unable to discover their claims. *See Rafter v. Liddle*, 704 F. Supp. 2d 370, 377–78 (S.D.N.Y. 2010).

As shown above, just the opposite is the case. Far from concealing material information, in 2005 NID sent multiple recall notices to the members of the putative class recalling the products and outlining how the kits contained defects that varied from the representations that had been made about them. Further, in 2005 NID informed the FDA of the defects and recalls, which agency itself publicly disclosed that information in that year. NID further advised the purported class members in 2005 that it was putting a hold on all of the company's products, which hold was again publicly disclosed in the Form 10-K. And when the United States

Attorney's Office commenced a criminal investigation into the manufacture and sale of the kits, this information was publicly and repeatedly disclosed in the company's SEC filings in 2004 and 2005 as well as by the media. Accordingly, because it cannot be disputed that Defendants hardly "concealed" material information and that Plaintiffs could have discovered the nature of their claim within the limitations period, there can be no tolling of the limitations period.[6]

**B. Plaintiffs' State Law Claims Are Also Time-Barred.**

**1. Third Cause of Action — Violation of New York General Business Law §§ 349 and 350.**

Plaintiffs' claims in the Third Cause of Action for violation of New York General Business Law §§ 349 and 350 are subject to the three-year statute of limitations set forth in New York C.P.L.R. § 214(2). *See Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452–53 (E.D.N.Y. 2007); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 208 (2001). A cause of action under § 349 accrues "when plaintiff has been injured by a deceptive act or practice violating section 349." *Gaidon*, 96 N.Y.2d at 210. Because, as noted, it is admitted that all defective kits were recalled in 2005 and this action was not commenced until five years later, Plaintiffs' claims are time-barred and must be dismissed.

For the same reasons as discussed above, Plaintiffs cannot assert any grounds for tolling the statute of limitations. In their pre-motion letter Plaintiffs referenced *Kotlyarsky v. N.Y. Post*, 757 N.Y.S.2d 703 (N.Y. Sup. Ct. 2003). However, in that very case the court held that the statute of limitations is *not* tolled "as long as the plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the

---

[6] Further, in the face of these numerous events that should have sparked diligent inquiry, Plaintiffs allege no action on their part to investigate their claim. This failure to allege their own diligence is itself separately fatal to any "fraudulent concealment" claim. *Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 635 (S.D.N.Y. 1998).

expiration of the applicable statute of limitations." *Id.* at 707. As shown at length above, it is plain that Plaintiffs here had that timely knowledge.

### 2. Fourth, Fifth and Sixth Causes of Action — Common Law Fraud.

All of these causes of action assert common law fraud in some form and thus are subject to the limitations period contained in New York C.P.L.R. § 213(8), which requires that such claims be brought within the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it."[7/] Accordingly, Plaintiffs' claims are time-barred except for any claims that accrued between April 15, 2004 and the 2005 recall of the defective kits. For the reasons discussed above, Plaintiffs may not take advantage of the two-year period also referenced in § 213(8).

### 3. Seventh and Eighth Causes of Action — Breach of Warranty.

Under the Uniform Commercial Code adopted in New York, breach of warranty claims are subject to a four-year statute of limitations. *See* N.Y. U.C.C. LAW § 2-725(1) (McKinney 2001). That statute expressly provides that the breach of warranty claim accrues when tender of delivery of the good is made to the buyer and is not dependent upon a plaintiff's awareness of the defect. *See, e.g.,Gall etta v. Stryker Corp.*, 283 F. Supp. 2d 914, 916 (S.D.N.Y. 2003) (citing *Heller v. U.S. Suzuki Motor Corp.*,64 N.Y.2d 407, 410 (1985)). Inasmuch as it is conceded that all of the alleged defective kits were in fact *recalled* in 2005, it is clear that none of the kits in issue were *delivered* within four years of April 15, 2010, and therefore Plaintiffs' warranty claims are time-barred and must be dismissed.

---

[7/]     Because the Sixth Cause of Action alleging Negligent Misrepresentation depends on the identical alleged acts of misrepresentation that Plaintiffs rely on in the Fourth and Fifth Causes of Action, it is subject to the same limitations period. *Fromer v. Yogel*, 50 F. Supp. 2d 227, 242 (S.D.N.Y. 1999).

Plaintiffs' pre-motion letter suggests that the statute of limitations might not run where a warranty of future performance of a product has been given. This assertion is purely academic here. There is no allegation whatsoever in the amended complaint that any warranty of future performance was ever given with regard to the kits. The law is quite clear: "Where there is no allegation that a warranty for future performance has been made, the statute of limitations for commencing an action for breach of warranty for the sale of goods is four years from the accrual date [i.e., the date of delivery]." *Pahuta v. Massey-Ferguson, Inc.*, 942 F. Supp. 161, 167 (W.D.N.Y. 1996) (internal citations omitted). Moreover, even if a warranty of future performance had been given — which is not even alleged to have occurred here — the statute of limitations is tolled only until the breach was or should have been discovered. *See* N.Y. U.C.C. LAW § 2-725(2). As demonstrated above, it is indisputable that any alleged breach should have been discovered by 2005, when recall notices were sent and all of the kits were recalled. Accordingly, under any possible circumstances, Plaintiffs' breach of warranty claims are time-barred and must be dismissed.

### 4. Ninth Cause of Action — Unjust Enrichment

Under New York law, "[t]he theory of unjust enrichment lies as a quasi-contract claim." *Gristede's Foods*, 532 F. Supp. 2d at 454. Claims based on implied or express contractual liability are subject to a six-year statute of limitations. N.Y. C.P.L.R. § 213(2). Such claims accrue at the time of breach and "not from the day the breach was discovered, or should have been discovered." *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997); *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2007) ("'[K]nowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action.'" (quoting *Ely-Cruickshank Co. v. Bank of Montreal*, 81

N.Y.2d 399, 402 (1993))).  Thus, only claims relating to kits sold between April 15, 2004 and the

2005 recall are not time-barred.

## V.    PLAINTIFFS' STATE LAW AND COMMON LAW CLAIMS FAIL TO STATE A VALID CLAIM FOR RELIEF

### A.    Third Cause of Action — New York Gen. Bus. Law § 349.

New York Gen. Bus. Law § 349 only protects against direct injuries to consumers.  *Blue*

*Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 206–07 (2004).

Plaintiffs never purchased any of the alleged defective kits.  Those kits were purchased by

clinical laboratories.  (Am. Compl. ¶ 28).  Plaintiffs seek to represent a class consisting of the

laboratories who purchased the kits and by this action are seeking damages resulting from the

laboratories' purchase of the kits.  *Id.* ¶¶ 6, 10).  The Plaintiffs are not laboratories.  Their

members are not laboratories.  Plaintiffs do not reimburse laboratories for the purchase of the

kits.  Accordingly, with respect to the Plaintiffs, the sale of kits to laboratories is an *indirect*

*injury* which is not reached by § 349 and therefore must be dismissed.  *Philip Morris*, 3 N.Y.3d

at 206–07 (third party payors of health care costs cannot sue for recovery of costs of service to

insureds who were lured into smoking by defendants' violations of § 349).[8]

Moreover, the alleged false marketing of the kits to the laboratories, which is the basis

for Plaintiffs' § 349 allegation, cannot support a claim under the statute, since both the Plaintiffs

and the labs are business entities, while the provision only applies to *consumer-oriented* conduct.

*See, e.g., In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 613 (S.D.N.Y. 2005); *Vitolo v.*

---

[8]       Plaintiffs' reliance on *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 350 (2d Cir. 2003) is misplaced. That case involved a federal court interpretation of a *New Jersey* statute.  It has no bearing on the interpretation of New York Gen. Bus. Law § 349, which the New York Court of Appeals definitively interpreted in *Philip Morris*.

*Mentor H/S Inc.*, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006).[9] Thus, for this reason as well the Third Cause of Action fails to state a claim for relief.

Plaintiffs' efforts to invoke the consumer protection statutes of other jurisdictions are unavailing. The named Plaintiffs do not have standing to assert consumer statutes of states where they are not resident. *See, e.g., Gunther v. Capital One,N.A.*, No. 09-cv-2966, 2010 WL 1404122, at *9 (E.D.N.Y. April 8, 2010). Plaintiffs did not even attempt to offer any challenge on this point in their pre-motion letter.

### B.   Fourth, Fifth and Sixth Causes of Action — Fraud and Misrepresentation Claims.

Plaintiffs' Fourth, Fifth and Sixth Causes of Action for fraud and misrepresentation fail, because each of those claims requires proof of reliance by the plaintiff on the defendant's alleged misrepresentations. *See, e.g., TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90–91 (2d Cir. 2005) (fraudulent concealment requires proof of reliance); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784 (2d Cir. 2003) (to succeed on claim of fraudulent misrepresentation, plaintiff must prove justifiable reliance on the statement); *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (common law fraud claim requires proof that plaintiff reasonably relied upon the representation); *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007) (plaintiff asserting claim of negligent misrepresentation must prove reasonable reliance on the information). Inasmuch as the Plaintiffs themselves never purchased the kits, or even reimbursed the laboratories for their purchases of the kits, there is simply no basis presented for any finding that any alleged marketing misrepresentations by NID regarding the kits were ever made to Plaintiffs or that they ever relied

---

[9]     Plaintiffs' reliance in their pre-motion letter on *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330 (2001), is unavailing. The Plaintiffs in that case were in fact consumers who had themselves purchased "vanishing premium" life insurance policies after receiving deceptive sales pitches. *Id.* at 339.

on any such misrepresentations by NID.  Accordingly, in the absence of any plausible averment

of reliance, Plaintiffs' fraud and misrepresentation claims must be dismissed.  Whether or not the

laboratories ever in fact relied on the representations of NID is irrelevant to Plaintiffs' claims

here, as it is well-settled that claims of fraud and misrepresentation cannot be based on

allegations of third-party reliance.  *See, e.g., City of New York v. Smokes-Spirits.com, Inc.*, 541

F.3d 425, 454 (2d Cir. 2008), *rev'd on other grounds, Hemi Group, LLC v. City of New York*,

130 S. Ct. 983 (2010).[10/]

C.      **Seventh and Eighth Causes of Action — Breach of Warranty.**

Plaintiffs Seventh and Eighth Causes of Action for breach of warranty fail to state a claim

for relief.  As a matter of law breach of warranty claims belong solely to the actual purchaser of

the goods.  *See, e.g.,In  re Rezulin*, 392 F. Supp. 2d at 608–09.  Because Plaintiffs never

purchased the kits, or even reimbursed the laboratories for their purchase of the kits, Plaintiffs'

warranty causes of action must be dismissed.  Plaintiffs' citation in their pre-motion letter to

*Desiano* is wholly inapposite, as nothing in that decision addresses the right of non-purchasers to

assert warranty claims.[11/]

D.      **Ninth Cause of Action — Unjust Enrichment.**

Plaintiffs' final claim for unjust enrichment fails to state a claim for relief.  This is

because Plaintiffs never paid any moneys to NID, neither directly because they never purchased

any kits themselves, nor indirectly because they did not reimburse the laboratories for their

purchases of the kits from NID.  Accordingly, because Plaintiffs never conferred any benefit on

---

[10/]    Plaintiffs' citation in their pre-motion letter to *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), is misplaced, as that case only concerned the issue of whether first party reliance is required under the federal mail fraud statute and has no relevance to the reliance requirement under common law.
[11/]    Similarly irrelevant is Plaintiffs' reference to *Spencer Trask Software and Information Services LLC v. RPost International, Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003), since the Plaintiffs in that case were the direct recipients of the defendants' warranty. *Id.* at 461. Further, unlike the instant action, that case had nothing to do with the purchase of goods, which is governed by the requirements of the UCC that are controlling here.

23

NID, an essential element of any claim for unjust enrichment, Plaintiffs' Ninth Cause of Action must be dismissed. *See, e.g., Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007). Plaintiffs' reliance in their pre-motion letter on *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) is misplaced. As noted there, an unjust enrichment claim will not lie where the Plaintiffs' relationship with the defendant is too attenuated. *Id.* at 403. Here, Plaintiffs had no relationship whatsoever with NID. As discussed above, and as Plaintiffs concede (Am. Compl. ¶ 28), NID sold kits to laboratories. Plaintiffs are not labs, their members are not labs, and they did not reimburse the labs for their purchases of the kits. As a result, no claim for unjust enrichment will lie.[12]

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the amended complaint in this action should be dismissed with prejudice.

5315157v.1

---

[12]      Plaintiffs' citation to *In re Bayer Corp.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010), is also unavailing, as the Plaintiffs in that case, unlike the Plaintiffs in the instant action, were themselves direct purchasers of the defective product. *Id.* at 364–65.

## CERTIFICATE OF SERVICE

I, Seth R. Goldman, certify that pursuant to Section III.D of the Individual Motion Practices of this Court, this Memorandum of Law was served on counsel for the Plaintiffs on February 14, 2011, as follows:

Michael A. London
Virginia E. Anello
Matthew S. Schoen
DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, NY 10038
**By Hand**

James R. Dugan, II
Douglas R. Plymale
Stephen B. Murray, Jr.
Stephen B. Murray, Sr.
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
**By Federal Express**

Gregory Hach
Michael A. Rose
HACH & ROSE, LLP
185 Madison Avenue, 8th Floor
New York, NY 10015
**By Hand**

Eric L. Young
Gerald Egan
EGAN YOUNG
Township Line Road, Suite 100
Blue Bell, PA 19422
**By Federal Express**

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
**By Hand**

_____

Seth R. Goldman