# EXHIBIT 2

# QUEST DIAGNOSTICS INC (DGX)

## 10-12B/A
Initial general form for registration of a class of securities pursuant to section 12(b)
Filed on 11/26/1996




```
                    SECURITIES AND EXCHANGE COMMISSION

                           Washington, D.C. 20549



                                  Form 10/A

                        Amendment No. 4 to Form 10




                General Form For Registration of Securities
                    Pursuant to Section 12(b) or (g) of
                     the Securities Exchange Act of 1934

                     CORNING CLINICAL LABORATORIES INC.
                (to be renamed Quest Diagnostics Incorporated)
              (Exact name of registrant as specified in its charter)



            Delaware                        16-1387862

 ----------------------------------    -----------------------
      (State or other jurisdiction of    (I.R.S. Employer
       incorporation or organization)   Identification No.)
             One Malcolm Avenue
           Teterboro, New Jersey                07608


 ----------------------------------    -----------------------
   (Address of principal executive offices)    (Zip Code)




                             201 393 5000
           ----------------------------------------------
           (Registrant's telephone number, including area code)




Securities to be registered pursuant to Section 12(b) of the Act:



       Title of each class         Name of each exchange on which
         to be so registered         each class is to be registered

  Common Stock, with attached Preferred     New York Stock Exchange
         Stock Purchase Right





Securities to be registered pursuant to Section 12(g) of the Act:
                                  None
--------------------------------------------------------------------------------
                              (Title of class)
```

<PAGE>

                     CORNING CLINICAL LABORATORIES INC.

INTRODUCTION



This Registration Statement on Form 10 relates to the registration under the
Securities Exchange Act of 1934, as amended, of the common stock, with
attached Preferred Stock Purchase Right, of the Registrant which is being
issued as described in the Information Statement (the "Information Statement"),

dated November 26, 1996, of Corning Incorporated. Selected pages of the Information Statement which are related to the Registrant and the securities being registered hereunder (the "Quest Diagnostics Information") are attached hereto as Exhibit 99.1 and are incorporated herein by reference in answer to the items of this Registration Statement set forth below.

Item 1. Business

The information required by this item is contained under the sections" Risk Factors--Risks Relating to Quest Diagnostics," "Business of Quest Diagnostics" and "The Relationship Among Corning, Quest Diagnostics and Covance After the Distributions" of the Quest Diagnostics Information and such sections are incorporated herein by reference.

Item 2. Financial Information

The information required by this item is contained under the sections "Capitalization of Quest Diagnostics," "Pro Forma Financial Information of Quest Diagnostics," "Selected Historical Financial Data of Quest Diagnostics" and "Management's Discussion and Analysis of Financial Condition and Results of Operations of Quest Diagnostics" of the Quest Diagnostics Information and such sections are incorporated herein by reference.

Item 3. Properties

The information required by this item is contained under the section "Business of Quest Diagnostics-- Properties" of the Quest Diagnostics Information and such section is incorporated herein by reference.

Item 4. Security Ownership of Certain Beneficial Owners and Management

The information required by this item is contained under the section "Security Ownership of Certain Beneficial Owners and Management of Quest Diagnostics" of the Quest Diagnostics Information and such section is incorporated herein by reference.

Item 5. Directors and Executive Officers

The information required by this item is contained under the section "Management of Quest Diagnostics" of the Quest Diagnostics Information and such section is incorporated herein by reference.

Item 6. Executive Compensation

The information required by this item is contained under the section "Management of Quest Diagnostics" of the Quest Diagnostics Information and such section is incorporated herein by reference.

Item 7. Certain Relationships and Related Transactions

The information required by this item is contained under the section "Management of Quest Diagnostics" of the Quest Diagnostics Information and such section is incorporated herein by reference.

Item 8. Legal Proceedings

The information required by this item is contained under the sections "Business of Quest Diagnostics-- Government Investigations and Related Claims" and "--Legal Proceedings" of the Quest Diagnostics Information and such sections are incorporated herein by reference.

Item 9. Market Price of and Dividends on the Registrant's Common Equity and
        Related Stockholder Matters

The information required by this item is contained under the sections "Risk Factors--Risks Relating to Quest Diagnostics--Absence of Dividends; Restrictions Imposed on Dividends by the Indenture and the Quest Diagnostics Credit Facility," "Risk Factors--Risks Relating to Quest Diagnostics--Absence of Prior Public

                                       2
<PAGE>

Market," "Risk Factors--Risks Relating to Quest Diagnostics--Potential
Volatility of Stock Price," "Description of Quest Diagnostics Capital
Stock--Quest Diagnostics Common Stock--Dividend Policy," "--Quest Diagnostics
Common Stock--Listing and Trading" and "Management of Quest Diagnostics" of
the Quest Diagnostics Information and such sections are incorporated herein
by reference.

Item 10. Recent Sales of Unregistered Securities

Not applicable.

Item 11. Description of Registrant's Securities to be Registered

The information required by this item is contained under the sections
"Description of Quest Diagnostics Capital Stock" and "Antitakeover Effects of
Certain Provisions of the Quest Diagnostics Certificate of Incorporation and
By-Laws" of the Quest Diagnostics Information and such sections are
incorporated herein by reference.

Item 12. Indemnification of Directors and Officers

The information required by this item is contained under the section
"Liability and Indemnification of Directors and Officers of Quest
Diagnostics" of the Quest Diagnostics Information and such section is
incorporated herein by reference.

Item 13. Financial Statements and Supplementary Data


The information required by this item is contained under the sections
"Capitalization of Quest Diagnostics," "Pro Forma Financial Information of Quest
Diagnostics," "Selected Historical Financial Data of Quest Diagnostics,"
"Management's Discussion and Analysis of Financial Condition and Results of
Operations of Quest Diagnostics" and "Financial Statements of Corning Clinical
Laboratories Inc. (to be renamed Quest Diagnostics Incorporated)" of the Quest
Diagnostics Information and such sections are incorporated herein by reference.


Item 14. Changes in and Disagreements with Accountants on Accounting and
Financial Disclosure

Not applicable.

Item 15. Financial Statements and Exhibits

(a) Financial Statements


   The information required by this item is contained under the section
"Financial Statements of Corning Clinical Laboratories Inc. (to be renamed Quest
Diagnostics Incorporated" of the Quest Diagnostics Information)" and such
section is incorporated herein by reference.


   (b) Exhibits

                                       3
<PAGE>



Exhibit
 Number    Description
 -------   -----------
 2.1*      Form of Transaction Agreement among Corning Incorporated, Corning
           Clinical Laboratories Inc. (Delaware), Covance Inc. and Corning Life Sciences Inc., Corning Clinical Laboratories Inc.
           (Michigan), dated November 22, 1996

 3.1*      Certificate of Incorporation of the Registrant

Case 1:10-cv-01692-RJD-RLM   Document 33-3   Filed 08/12/11   Page 6 of 9 PageID #: 576

| | |
|---|---|
| 3.2* | By-Laws of the Registrant |
| 4.1* | Form of Common Stock certificate |
| 4.2* | Form of Rights Agreement between Corning Clinical Laboratories Inc. and Harris Trust and Savings Bank, dated December 31, 1996 |
| 10.1* | Form of Tax Sharing Agreement among Corning Incorporated, Corning Clinical Laboratories Inc. and Covance Inc., dated [     ], 1996 |
| 10.2* | Form of Spin-Off Tax Indemnification Agreement between Corning Incorporated and Corning Clinical Laboratories Inc. dated, [     ], 1996 |
| 10.3* | Form of Spin-Off Tax Indemnification Agreement between Corning Clinical Laboratories Inc. and Covance Inc., dated [     ], 1996 |
| 10.4* | Form of Credit Agreement among Corning Clinical Laboratories Inc., Morgan Guaranty Trust Company of New York, Nationsbank, N.A. and Wachovia Bank of Georgia, N.A., dated [     ], 1996 |
| 10.5* | Form of Spin-Off Tax Indemnification Agreement between Covance Inc. and Corning Clinical Laboratories Inc., dated [     ], 1996 |
| 10.6* | Form of Corning Clinical Laboratories Inc. Employees Stock Purchase Plan |
| 10.7* | Form of Corning Clinical Laboratories Inc. Variable Compensation Plan |
| 10.8* | Form of Corning Clinical Laboratories Inc. Profit Sharing Plan |
| 10.9* | Form of Corning Clinical Laboratories Inc. Employee Equity Participation Program |
| 10.10* | Form of Corning Clinical Laboratories Inc. Executive Retirement Supplemental Plan |
| 10.11* | Form of Corning Clinical Laboratories Inc. Directors' Restricted Stock Plan |
| 10.12* | Form of Employment Agreement between Kenneth W. Freeman and Corning Clinical Laboratories Inc. |
| 21* | Subsidiaries of the Registrant |
| 27* | Financial Data Schedules |
| 99.1 | Selected pages of the Information Statement of Corning Incorporated dated November 26, 1996 (pages 2; 29-108; F-1-F-32) |

-------------
* Previously filed.

4

<PAGE>

## SIGNATURES

Pursuant to the requirements of Section 12 of the Securities Exchange Act of 1934, the registrant has duly caused this amendment to the registration statement to be signed on its behalf by the undersigned, thereunto duly authorized.

CORNING CLINICAL LABORATORIES INC.

Dated: November 26, 1996        By: /s/ Kenneth W. Freeman
                                    ---------------------------------------
                                    Kenneth W. Freeman, President
                                    and Chief Executive Officer

TABLE OF CONTENTS

```
                                                                    Page
                                                                    ----
THE RELATIONSHIP AMONG CORNING, QUEST DIAGNOSTICS AND COVANCE AFTER THE
DISTRIBUTIONS                                                        29
QUEST DIAGNOSTICS INCORPORATED
  RISK FACTORS                                                       33
  CAPITALIZATION OF QUEST DIAGNOSTICS                                39
  SELECTED HISTORICAL FINANCIAL DATA OF QUEST DIAGNOSTICS            40
  PRO FORMA FINANCIAL INFORMATION OF QUEST DIAGNOSTICS               44
  MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS
   OF OPERATIONS OF QUEST DIAGNOSTICS                                51
  BUSINESS OF QUEST DIAGNOSTICS                                      60
  MANAGEMENT OF QUEST DIAGNOSTICS                                    83
  SECURITY OWNERSHIP BY CERTAIN BENEFICIAL OWNERS AND MANAGEMENT OF QUEST
   DIAGNOSTICS                                                       93
  DESCRIPTION OF QUEST DIAGNOSTICS CAPITAL STOCK                     95
  ANTITAKEOVER EFFECTS OF CERTAIN PROVISIONS OF THE QUEST DIAGNOSTICS
  CERTIFICATE OF INCORPORATION AND BY-LAWS                          101
  DESCRIPTION OF CERTAIN INDEBTEDNESS OF QUEST DIAGNOSTICS          105
  LIABILITY AND INDEMNIFICATION OF DIRECTORS AND OFFICERS OF QUEST
   DIAGNOSTICS                                                      108
INDEX TO FINANCIAL STATEMENTS                                        F-1
```

2

<PAGE>

THE RELATIONSHIP AMONG CORNING, QUEST DIAGNOSTICS AND COVANCE
AFTER THE DISTRIBUTIONS

   After the Distributions, Quest Diagnostics Incorporated ("Quest Diagnostics") and Covance Inc. ("Covance") will be independent public companies and Corning Incorporated ("Corning") will not have any ownership interest in either Quest Diagnostics or Covance other than shares of Quest Diagnostics' voting cumulative preferred stock. Corning, Quest Diagnostics and Covance will enter into certain agreements, summarized below, to provide for an orderly transition to the status of three separate independent companies, to govern their relationship subsequent to the Distributions and to provide for the allocation of tax and certain other liabilities and obligations arising from periods prior to the Distributions. Copies of the forms of such agreements have been filed as exhibits to the Registration Statements of which this Information Statement is a part. The following description summarizes the material terms of such agreements, but is qualified by reference to the texts of such agreements as filed.

Transaction Agreement

   Corning, Quest Diagnostics and Covance will enter into the Transaction Agreement (the "Transaction Agreement") providing for, among other things, certain conditions precedent to the Distributions, certain corporate transactions required to effect the Distributions and other arrangements between Corning, Quest Diagnostics and Covance subsequent to the Distributions. See "The Distributions--Conditions; Termination."

   The Transaction Agreement will provide for, among other things, assumptions of liabilities and cross- indemnities designed to allocate generally, effective as of the Distribution Date, financial responsibility for the liabilities arising out of or in connection with (i) the clinical laboratory business to Quest Diagnostics and its subsidiaries, (ii) the contract research business to Covance and its subsidiaries and (iii) all other business conducted by Corning prior to the Distribution Date to Corning and its subsidiaries other than Quest Diagnostics and Covance.

   The Transaction Agreement will provide that Corning, Quest Diagnostics and Covance will use their respective commercially reasonable efforts to achieve an allocation of consolidated indebtedness of Corning and a capital structure

that reflects the capital structure after the Distributions of Corning, Quest Diagnostics and Covance as contemplated in the discussion under "Capitalization of Quest Diagnostics" and "Capitalization of Covance." In addition to the specific indemnity described below, Corning, Quest Diagnostics and Covance are obligated under the Transaction Agreement to indemnify and hold harmless each other in respect of Indemnifiable Losses (as defined therein) arising out of or otherwise relating to the management or conduct of their respective businesses or the breach of any provision of the Transaction Agreement; provided, however, that Quest Diagnostics will have no obligation to indemnify or hold harmless Corning in respect of Indemnifiable Losses arising out of any governmental claims or investigations described in the next paragraph.

   As discussed under "Business of Quest Diagnostics--Government Investigations and Related Claims," Quest Diagnostics is subject to several governmental investigations. Any amounts paid by Quest Diagnostics to settle these investigations, or as a result of a judgment relating to these investigations, will be indemnified by Corning under the Transaction Agreement. Under the Transaction Agreement Corning will agree to indemnify Quest Diagnostics against all monetary penalties, fines or settlements arising out of any governmental criminal, civil or administrative investigations or claims that have been settled prior to or are pending as of the Distribution Date, pursuant to service of subpoena or other notice of such investigation to Quest Diagnostics, as well as any qui tam proceeding for which a complaint was filed prior to the Distribution Date whether or not Quest Diagnostics has been served with such complaint or otherwise been notified of the pendency of such action, to the extent that such investigations or claims arise out of or are related to alleged violations of federal fraud and health care statutes identified in the Transaction Agreement by reason of Quest Diagnostics or any company acquired by Quest Diagnostics billing any federal program or agency for services rendered to beneficiaries of such program or agency. Corning will also indemnify Quest Diagnostics for 50% of the aggregate of all judgment or settlement payments made by Quest Diagnostics that are in excess of $42.0 million in respect of claims by private parties (i.e., nongovernmental parties such as private insurers) that relate to indemnified or previously settled governmental claims and that allege overbillings by Quest Diagnostics or any existing subsidiaries of Quest Diagnostics for services provided prior to the Distribution Date; provided, however, such indemnification for private claims will terminate five years after the Distribution Date (whether or not settled) and will not exceed $25.0 million in the aggregate (reduced by certain tax benefits as described below). Quest Diagnostics' aggregate reserve with respect to all governmental and private claims, including litigation costs, was $215 million at September 30, 1996 and is estimated to be reduced to $85 million at the Distribution Date as a result of the payment of settled claims, primarily the Damon settlement of $119 million.

                                       29
<PAGE>

   Corning will not indemnify Quest Diagnostics against any governmental claims that arise after the Distribution Date, even though relating to events prior to the Distribution Date, or to any private claims that do not relate to the indemnified or previously settled governmental claims or investigations or investigations that relate to post- Distribution Date billings. Corning will not indemnify Quest Diagnostics against consequential or incidental damages relating to the billing claims, including losses of revenues and profits as a consequence of any exclusion from participation in federal or state health care programs or the fees and expenses of the litigation, including attorneys' fees and expenses. All amounts indemnified against by Corning for the benefit of Quest Diagnostics will be calculated on a net after-tax basis by taking into account any deductions and other tax benefits realized by Quest Diagnostics (or a consolidated group of which Quest Diagnostics is a member after the Distributions (the "Quest Diagnostics Group")) in respect of the underlying settlement, judgment payment, or other loss (or portion thereof) indemnified against by Corning generally at the time and to the extent such deductions or tax benefits are deemed to reduce the tax liability of Quest Diagnostics or the Quest Diagnostics Group under the Transaction Agreement.

The Transaction Agreement provides that, in the case of any claims for which Corning, Quest Diagnostics or Covance are entitled to indemnification, the indemnified party will control the defense of any claim unless the indemnifying party elects to assume such defense. However, in the case of all private claims related to indemnified governmental claims related to alleged overbillings, Quest Diagnostics will control the defense. Disputes under the Transaction Agreement are subject to binding arbitration. The Transaction Agreement will also provide that, except as otherwise set forth therein or in any other agreement, all costs or expenses incurred on or prior to the Distribution Date in connection with the Distributions will be allocated among the parties. Except as set forth in the Transaction Agreement or any related agreement, each party shall bear its own costs and expenses incurred after the Distribution Date.

Spin-Off Tax Indemnification Agreements

Corning and Quest Diagnostics will enter into a tax indemnification agreement (the "Corning/Quest Diagnostics Spin-Off Tax Indemnification Agreement") pursuant to which (1) Quest Diagnostics will represent to Corning that, to the best of its knowledge, the materials relating to Quest Diagnostics submitted to the Internal Revenue Service ("IRS") in connection with the request for ruling submitted to the IRS are complete and accurate in all material respects, (2) Quest Diagnostics will represent that it has no present intention to undertake the transactions described in part (3)(iii) hereafter or cease to engage in the active conduct of providing clinical laboratory testing services, (3) Quest Diagnostics will covenant and agree that for a period of two years following the Distribution Date (the "Restricted Period"), (i) Quest Diagnostics will continue to engage in the clinical laboratory testing business, (ii) Quest Diagnostics will continue to manage and own at least 50% of the assets which it owns directly and indirectly immediately after the Distribution Date and (iii) neither Quest Diagnostics, nor any related corporation nor any of their respective directors, officers or other representatives will undertake, authorize, approve, recommend, permit, facilitate, or enter into any contract, or consummate any transaction with respect to: (A) the issuance of Quest Diagnostics Common Stock (including options and other instruments convertible into Quest Diagnostics Common Stock) which would exceed fifty percent (50%) of the outstanding shares of Quest Diagnostics Common Stock immediately after the Distribution Date; (B) the issuance of any other instrument that would constitute equity for federal tax purposes ("Disqualified Quest Diagnostics Stock"); (C) the issuance of options and other instruments convertible into Disqualified Quest Diagnostics Stock; (D) any repurchases of Quest Diagnostics Common Stock, unless such repurchases satisfy certain requirements; (E) the dissolution, merger, or complete or partial liquidation of Quest Diagnostics or any announcement of such action; or (F) the waiver, amendment, termination or modification of any provision of the Quest Diagnostics Rights Plan (as defined therein) in connection with, or in order to permit or facilitate, any acquisition of Quest Diagnostics Common Stock or other equity interest in Quest Diagnostics, and (4) Quest Diagnostics will agree to indemnify Corning for Taxes (as defined below) arising from violations of (1), (2) or (3) above and for Taxes arising as a result of (A) an acquisition of 20% or more of the stock of Quest Diagnostics by a person or related persons during the Restricted Period or (B) the commencement of a tender or purchase offer by a third party for 20% or more of Quest Diagnostics stock. If obligations of Quest Diagnostics under this agreement were breached and as a result thereof one or both of the Distributions do not qualify for the treatment stated in the ruling Corning requested from the IRS (the "IRS Ruling"), Quest Diagnostics would be required to indemnify Corning for Taxes imposed and such indemnification obligations could exceed the net asset value of Quest Diagnostics at such time.

Corning and Covance will enter into a tax indemnification agreement (the "Corning/Covance Spin-Off Tax Indemnification Agreement") pursuant to which (1) Covance will represent to Corning that to the best of its knowledge,

30

<PAGE>

the materials relating to Covance submitted to the IRS in connection with the request for ruling submitted to the IRS are complete and accurate in all material respects, (2) Covance will represent that it has no present intention to undertake the transactions described in part (3)(iii) hereafter